EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Alicia Negrón Placer, Ramón Negrón<br>    Recurridos<br><br>        v.<br><br>Secretario de Justicia, Superintendente de la Policía<br>    Peticionarios<br>_____<br>Citibank, N.A., et al<br>    Recurridos<br><br>       v.<br>Hon. Secretario de Justicia, Estado Libre Asociado de P.R.<br>    Peticionarios | Certiorari<br><br>2001 TSPR 63 |

Número del Caso: CC-1999-62

Fecha: 2/mayo/2001

Tribunal de Circuito de Apelaciones:
>                    Circuito Regional II


Panel integrado por su Presidente, Juez Gierbolini, y los Jueces Cordero y Hernández Torres


Oficina del Procurador General:
>                    Lcda. Sylvia Roger Stefani
>                    Procuradora General Auxiliar


Abogado de Alicia Negrón Placer y Ramón Negrón:
>                    Lcdo. Antonio Bauzá Torres

Abogada de Citibank, N.A., et al.:
>                    Lcda. Rosa Lydia Sánchez García


Materia: Impugnación de Confiscación


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Alicia Negrón Placer, Ramón
Negrón
      Recurridos

          v.

Secretario de Justicia,
Superintendente de la
Policía
      Peticionarios

Citibank, N.A., et al
      Recurridos

          v.

Hon. Secretario de Justicia,
Estado Libre Asociado de
Puerto Rico
      Peticionarios

CC-99-62        Certiorari

Opinión del Tribunal emitida por el Juez Asociado señor Rivera Pérez.

San Juan, Puerto Rico, a 2 de mayo de 2001.

El Estado Libre Asociado de Puerto Rico solicita la revisión de una resolución dictada por el Tribunal de Circuito de Apelaciones, mediante la cual se denegó la expedición del auto solicitado. El foro apelativo indicó no tener jurisdicción para revisar en los méritos una resolución emitida por el Tribunal de Primera Instancia que le ordenó al Estado Libre Asociado entregarle a la señora Alicia Negrón Placer la suma en que fue valorado su vehículo confiscado y los intereses, a partir del momento de la ocupación. Concedimos un término a la señora Alicia Negrón Placer para mostrar causa por la cual no debíamos dejar sin efecto la

resolución recurrida y devolver este asunto al Tribunal de Circuito de Apelaciones para la consideración del recurso en sus méritos. Dicha parte compareció en cumplimiento de la mencionada orden de mostrar causa. Estando en posición de resolver el recurso, procedemos a así hacerlo.

I

El 2 de junio de 1995 fue confiscado un vehículo de motor, marca Dodge, modelo Daytona, año 1989, tablilla AXN-570, por alegadamente haberse utilizado en la comisión de un delito de escalamiento.[1] Por tal motivo, la señora Alicia Negrón Placer y el señor Ramón Negrón presentaron el 14 de julio de 1995 una demanda ante el Tribunal de Primera Instancia, Sala Superior de Bayamón, sobre impugnación de confiscación, civil número DAC95-0564 (404).[2] La vendedora condicional del automóvil confiscado, Citibank, N.A., y National Insurance Co., también presentaron demanda el 21 de julio de 1995 ante la misma sala del Tribunal de Primera Instancia, sobre impugnación de la confiscación del referido vehículo, civil número DAC95-0575 (406).[3]

Citibank, N.A. y National Insurance Co., en protección de su interés propietario, consignaron la cantidad de cinco mil quinientos dólares ($5,500), como fianza para garantizar el pago del importe de la tasación y, por consiguiente, solicitaron la entrega del vehículo confiscado.[4] El Tribunal de Primera Instancia aprobó la fianza presentada y dictó orden de 23 de agosto de 1995 al Departamento de Justicia para que le entregara el vehículo ocupado a la parte demandante, Citibank, N.A., en el caso civil número DAC95-0575 (406).[5] Dicha orden no fue notificada a la parte demandante, señora Alicia Negrón Placer, en el otro caso, civil número DAC95-0564 (404). Esta persona era la dueña del vehículo (compradora condicional) para todos los efectos legales.

El Estado Libre Asociado, parte demandada en ambos casos, solicitó el 12 de agosto de 1995 la consolidación de ambos, por estar "relacionados dichos casos sobre las mismas cuestiones de hecho y de derecho".[6] Surge de nuestro expediente, que posteriormente el Tribunal de Primera Instancia concedió la consolidación solicitada.[7]

---

[1] Dicho vehículo aparecía registrado ante el Departamento de Transportación y Obras Públicas a nombre de la señora María C. Rivera Gómez, y había sido vendido a la señora Alicia Negrón Placer.

[2] Apéndice III de la Petición de Certiorari, pág. 7.

[3] Apéndice IV, Íd., págs. 8-9.

[4] Apéndices V y VI, Íd., págs. 10-12.

[5] Apéndice XI, Íd., pág. 19. El vehículo fue entregado a Citibank, N.A. el 27 de octubre de 1995. Véase Apéndice XIV, de la Petición de Certiorari, págs. 23-23(a).

[6] Apéndice IX, Íd., pág. 17.

[7] No surge de nuestro expediente la fecha en que fue emitida esa orden.

El 4 de octubre de 1995, la señora Negrón Placer presentó una moción de sentencia sumaria, señalando que el caso criminal que originó la confiscación había terminado con una determinación de no causa probable contra uno de los coacusados durante la vista preliminar.[8] Así, pues, el 13 de febrero de 1996, el Tribunal de Primera Instancia emitió sentencia enmendada, mediante la cual decretó "la ilegalidad de la confiscación llevada a cabo sobre el vehículo".[9] En esa sentencia, dicho foro ordenó "la devolución y entrega de[l] vehículo confiscado a la demandante [o, en caso] de no podérsele devolver, deberá, entonces, [el Estado Libre Asociado] pagar la cantidad en que fue tasado dicho vehículo, con sus intereses legales, a partir de la confiscación".[10] Como consecuencia de la referida sentencia que decretó ilegal la confiscación del vehículo, la fianza que se presentó en garantía quedó cancelada y aquél que la prestó, o sea, el banco acreedor, Citibank, N.A., obtuvo el monto de la misma. De esa sentencia ninguna de las partes recurrió mediante recurso de apelación, por lo que advino final y firme.

Luego de varios incidentes procesales acaecidos en el Tribunal de Primera Instancia,[11] la señora Negrón Placer le informó a dicho foro que el Estado no había cumplido con lo ordenado en su sentencia, o sea, no se le había devuelto su vehículo. Surge de los documentos en autos, que Citibank, N.A. le informó al Tribunal de Primera Instancia que el vehículo confiscado había sido levantado, luego de haberse prestado y aprobado la fianza en garantía, y que se encontraba en su posesión.[12] Además, Citibank, N.A. presentó, el 3 de marzo de 1998, una moción solicitándole al Tribunal que le ordenara a la señora Alicia Negrón Placer firmar unos documentos para cederle el vehículo al banco, o pagar los plazos vencidos del

---

[8] Apéndice XII, Íd., pág. 20.

[9] Copia de la notificación de esta sentencia enmendada fue archivada en autos el 29 de abril de 1996. Apéndice XIX de la Petición de Certiorari, págs. 33-34.

[10] Íd. En esa sentencia, final y firme, el Tribunal de Primera Instancia le ordenó al Estado la devolución del auto a "la demandante", sin especificar a cuál, ya que tanto la señora Alicia Negrón Placer, así como Citibank, N.A. y National Insurance Co., presentaron demanda impugnando la confiscación.

[11] Entre las situaciones que ocurrieron durante el trámite procesal, el Estado presentó una oposición a la moción de sentencia sumaria presentada por la señora Negrón Placer y solicitó se emitiera sentencia sumaria a su favor. Luego de tener conocimiento de la sentencia ya emitida el 13 de febrero de 1996 por el Tribunal de Primera Instancia, el Estado solicitó su reconsideración. El 1 de abril de 1996, dicho Tribunal dictó una orden declarando con lugar la moción en oposición y en solicitud de sentencia sumaria presentada por el Estado y declaró no ha lugar la reconsideración presentada. Esta orden fue notificada el 29 de abril de 1996. Ante esta situación, el Estado presentó una moción solicitando una aclaración de las órdenes emitidas por el foro de instancia. El tribunal a quo declaró con lugar esa moción y dejó sin efecto la sentencia del 13 de febrero de 1996. No obstante, mediante orden notificada el 3 de octubre de 1996, el Tribunal de Primera Instancia señaló que la sentencia del 13 de febrero de 1996 estaba en todo vigor. Véase Apéndices XV al XXII de la Petición de Certiorari, págs. 24-39.

[12] Apéndice XXVI, Íd., pág. 44.

préstamo para hacerle entrega de la unidad, o refinanciar dicho vehículo.[13] El Tribunal de Primera Instancia declaró con lugar esta moción el 5 de mayo de 1998, notificada el 14 de septiembre de 1998.[14]

No obstante, el Tribunal de Primera Instancia emitió la resolución recurrida el 4 de julio de 1998, ordenándole al Departamento de Justicia que le entregara a la demandante el valor de la tasación del vehículo, más sus intereses.[15] Señaló, que el hecho de haberle entregado el vehículo al acreedor condicional, no lo relevaba de dicho pago.[16] Dicha resolución fue notificada el 14 de septiembre de 1998.

Inconforme con esta resolución, el Estado presentó un recurso de certiorari ante el Tribunal de Circuito de Apelaciones. Cuestionó ante ese foro apelativo la determinación del Tribunal de Primera Instancia de ordenarle el doble cumplimiento de lo que por ley le corresponde satisfacer. Arguye, que exigirle pagar el monto de la fianza luego de haber entregado el vehículo y devuelto dicha suma, es incorrecto, como cuestión de derecho.[17] El 16 de diciembre de 1998, el Tribunal de Circuito de Apelaciones, mediante una escueta resolución, denegó la petición de certiorari sin discutir el error planteado. Concluyó que carecía de jurisdicción para atender el recurso presentado, porque lo que se pretendía era revisar la sentencia del 13 de febrero de 1996, de la cual nunca se recurrió y, por lo tanto, ésta advino final y firme.

Inconforme con dicha determinación, el Estado acude ante nos solicitando que se deje sin efecto la resolución emitida por el Tribunal de Circuito de Apelaciones. Alega que la revisión solicitada ante ese Tribunal es sobre la resolución emitida el 4 de julio de 1998, y notificada el 14 de septiembre de 1998, la cual está relacionada con un incidente posterior a la sentencia, en específico el procedimiento de ejecución de la misma.

II

La Asamblea Legislativa de Puerto Rico aprobó la Ley Uniforme de Confiscaciones de 1988,[18] con el propósito de actualizar la legislación que había estado en vigor desde 1960 y ampliar el marco de la autoridad del Estado para confiscar la propiedad que sea utilizada con fines ilegales.[19] La intención de esta ley es evitar que el vehículo o la propiedad

---

[13] Apéndice XVII, Íd., págs. 45-46.

[14] Apéndice XXVIII, Íd., págs. 47-48.

[15] Apéndice XXIX, Íd., págs. 53-57.

[16] Íd.

[17] Véase Petición de Certiorari ante el Tribunal de Circuito de Apelaciones, Apéndice XXXI, Íd., pág. 65.

[18] Ley Núm. 55 de 16 de agosto de 1989, según enmendada, 34 L.P.R.A. sec. 1723 et seq.

confiscada pueda volverse a utilizar para fines ilícitos, y sirve de castigo adicional para disuadir a los criminales.[20] Reiteradamente se ha establecido que el procedimiento de confiscación en la Ley Uniforme de Confiscaciones de 1988, supra, es de carácter civil o in rem; es decir va dirigido contra la cosa misma y no contra el dueño de la propiedad, su poseedor, encargado o cualquier otra persona con algún interés legal sobre ésta. Dicho procedimiento persigue y refleja un propósito punitivo.[21]

Aun cuando el procedimiento de confiscación es uno de carácter civil o in rem, la Ley Uniforme de Confiscaciones de 1988, supra, requiere que se notifique de la confiscación al dueño, según consta en el Registro de Vehículos, al que se considere dueño, al acreedor condicional que tiene su gravamen inscrito en el Departamento de Transportación y Obras Públicas, o al encargado o persona con derecho o interés en la propiedad ocupada.[22] El requisito estatutario de notificación a cada una de esas personas persigue el propósito de salvaguardar los derechos constitucionales de una parte que tiene algún interés en la propiedad confiscada y brindarle la oportunidad de levantar y probar las defensas válidas que pueda tener, es decir, la oportunidad de ser oído.[23]

Además, la Ley Uniforme de Confiscaciones de 1988, supra, permite que las personas que han sido notificadas puedan impugnar la confiscación presentando una demanda contra el Estado Libre Asociado.[24] De esta manera, la Ley Uniforme de Confiscaciones, supra, confiere capacidad legal para ser demandante a todo aquel que, a tenor con la ley, debe ser notificado de la confiscación. Como resultado, el acreedor condicional, al igual que el dueño, tienen autoridad y pueden demandar para impugnar la confiscación que llevó a cabo el Estado.

Asimismo, la ley provee para que el demandante, en protección de su interés sobre la propiedad confiscada, pueda prestar una fianza como garantía a favor del Estado por el importe de la tasación de la propiedad ocupada. Una vez el tribunal aprueba la fianza, ordena que la propiedad confiscada sea entregada a su dueño y la garantía (fianza) sustituye

---

[19] Exposición de Motivos de la Ley Núm. 55 del 16 de agosto de 1989, Leyes de Puerto Rico, págs. 250-251.

[20] General Accident Ins. Co. v. E.L.A., 137 D.P.R. 466 (1994).

[21] Del Toro Lugo v. E.L.A., 136 D.P.R. 973 (1994); Carlo v. Srio. de Justicia, 107 D.P.R. 356 (1978); E.L.A. v. Tribunal Superior, 94 D.P.R. 717 (1967); Meléndez v. Tribunal Superior, 90 D.P.R. 656 (1964); Estado Libre Asociado v. Tribl. Superior, 76 D.P.R. 842 (1954); Metro Taxicabs v. Tesorero, 73 D.P.R. 171 (1952); General Motors Acceptance v. Brañuela, 61 D.P.R. 725 (1943).

[22] Artículos 3 y 4 de la Ley Uniforme de Confiscaciones de 1988, supra, 34 L.P.R.A. secs. 1723(a)(2)(b) y 1723(b).

[23] General Accident Ins. Co. v. E.L.A., supra.

[24] Véase Artículo 8 de la Ley Uniforme de Confiscaciones, supra, 34 L.P.R.A. sec. 1723(f).

la propiedad ocupada.[25] La garantía responderá en lugar de la propiedad, si la legalidad de la confiscación fuera sostenida. Por el contrario, si el tribunal decreta la ilegalidad de la confiscación, el monto de la fianza presentada en garantía por la propiedad confiscada será devuelto a la persona que la haya prestado.

Cuando estas personas, que la propia ley les reconoce capacidad para ser demandantes, obtienen una sentencia favorable en una acción de impugnación de confiscación, el Artículo 13 de la Ley Uniforme de Confiscaciones de 1988, supra, dispone los remedios a conceder.[26] Este artículo establece, en lo aquí pertinente, lo siguiente:

> En aquellos casos que el tribunal decrete la ilegalidad de una confiscación, la Junta devolverá la propiedad ocupada al demandante o en caso de que haya dispuesto de la misma, el Estado Libre Asociado de Puerto Rico le pagará el importe de la tasación al momento de la ocupación o la cantidad de dinero por la cual se haya vendido, la que resulte mayor, más intereses de conformidad con la Regla 44.3 de Procedimiento Civil, Ap. III del Título 32, a partir de la fecha de la ocupación.

El referido artículo contempla dos alternativas cuando el tribunal declara inválida una confiscación, a saber: (1) devolver la propiedad ocupada al demandante o; (2) en caso de que se haya dispuesto de la misma, se pagará una suma de dinero; y solamente en ésta última circunstancia se impone el pago de intereses.[27]

Resulta pertinente a la controversia ante nos, destacar que el interés económico en el gravamen que poseen los acreedores condicionales sobre vehículos sujetos a una venta condicional no desaparece con su confiscación.[28] El acreedor condicional, en los casos de incumplimiento con el contrato de venta condicional, puede optar por los mecanismos provistos por ley para la ejecución de su garantía.[29] No obstante, un acreedor condicional no puede valerse de los mecanismos provistos en el Artículo 10 de la Ley Uniforme de

---

[25] Dispone, en lo pertinente, el Artículo 10 de la Ley Uniforme de Confiscaciones, 34 L.P.R.A. sec. 1723h, lo siguiente:

> Dentro de los quince (15) días de haberse radicado la demanda de impugnación, el demandante tendrá derecho a prestar una garantía a favor del Estado Libre Asociado de Puerto Rico ante el secretario del tribunal correspondiente, a satisfacción del tribunal por el importe de la tasación de la propiedad ocupada. Dicha garantía podrá ser en moneda legal, cheques certificados, obligaciones hipotecarias o por compañías de fianza. **Aprobada la garantía, el tribunal ordenará que las propiedades sean entregadas a su dueño.** (Énfasis nuestro.)

[26] 34 L.P.R.A. sec. 1723k-1.

[27] Informe de la Comisión de lo Jurídico Penal de la Cámara de Representantes, P. de la C. 324, pág. 4, citado en Alejandro Rivera v. E.L.A., 140 D.P.R. 538 (1996).

[28] General Accident Ins. Co. v. E.L.A, supra.

[29] Para la fecha de los hechos del presente caso estaba vigente la Ley de Ventas Condicionales, Ley Núm. 61 de 13 de abril de 1916, según enmendada, que fue derogada por la Ley Núm. 241 de 19 de septiembre de 1996. Esta última enmendó la Ley Núm. 208 de 17 de agosto de 1995, conocida como la Ley de Transacciones Comerciales, que regula actualmente los acuerdos de gravámenes mobiliarios.

Confiscaciones de 1988, _supra_, para ejecutar su garantía consumada por virtud de un contrato de venta condicional.

III

El Tribunal de Circuito de Apelaciones, como todo tribunal en Puerto Rico, goza de la característica de ser uno rogado. Esto significa que para resolver las controversias surgidas en los diferentes procesos judiciales, las partes que tengan interés y derecho tienen por necesidad que pedirle a este tribunal que intervenga.[30] Esto se logra mediante la presentación oportuna de los diferentes recursos en alzada provistos por ley.

El Estado solicitó ante el Tribunal de Circuito de Apelaciones la revisión de la resolución emitida el 4 de julio de 1998. Esta resolución se refería a un incidente posterior a la sentencia, en específico sobre la ejecución de la misma. Los procedimientos de ejecución de sentencia, por su propia naturaleza, son procedimientos suplementarios.[31] Estos procedimientos constituyen una prolongación o apéndice del proceso que dio lugar a una sentencia, que en ocasiones deben realizarse para darle cumplimiento o eficacia a dicha sentencia.[32] En un pleito, las actividades procesales ulteriores que se llevan a cabo luego del pronunciamiento judicial medular acomodan la realidad exterior al mandato del tribunal.[33] No se trata de revivir las controversias resueltas entre las partes ni de modificar los derechos adjudicados.[34] De las resoluciones emitidas en dichos procedimientos, la parte afectada tiene derecho a solicitar la revisión de los mismos ante el Tribunal de Circuito de Apelaciones, mediante el recurso de _certiorari_.[35]

El auto de _certiorari_ aquí contemplado es un remedio procesal utilizado para que un tribunal de mayor jerarquía pueda corregir un error cometido por un tribunal inferior.[36] El referido recurso es aquel dispuesto por el Artículo 4.002 (f) de la Ley de la Judicatura

---

[30] José Cuevas Segarra, _Tratado de Derecho Procesal Civil_, San Juan, Publicaciones J.T.S., 2000, T. I, pág. 856.

[31] Véase _Igaravidez v. Ricci_, res. el 4 de noviembre de 1998, 98 T.S.P.R. 146, 147 D.P.R. ___ (1998), 98 J.T.S. 143.

[32] Íd.

[33] Pietro-Castro y Ferrandiz, _Derecho Procesal Civil_, 2da ed., Madrid, Ed. Tecnos, 1974, Vol. II, a la pág. 157.

[34] _Ortíz v. U. Carbide Grafito, Inc._, res. el 30 de junio de 1999, 99 T.S.P.R. 108, 148 D.P.R. ___ (1999), 99 J.T.S. 112.

[35] Artículo 4.002(f) de la Ley de la Judicatura de 1994, según enmendada por la Ley Núm. 248 de 25 de diciembre de 1995, 4 L.P.R.A. sec. 22, dispone, en lo aquí pertinente, que podrán ser revisadas por el Tribunal de Circuito de Apelaciones, mediante auto de _certiorari_ expedido a su discreción, _cualquier resolución_ u orden dictada por el Tribunal de Primera Instancia. (Énfasis nuestro.) Véase, además, Regla 52.1 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 52.1; Regla 32 del Reglamento del Tribunal de Circuito de Apelaciones, 4 L.P.R.A. Ap. XXII-A, R. 32.

[36] _Pueblo v. Colón Mendoza_, res. el 29 de octubre de 1999, 99 T.S.P.R. 165, 149 D.P.R. ___ (1999), 99 J.T.S. 175.

de Puerto Rico de 1994, según enmendada.[37]  Distinto a los recursos de apelación, el tribunal de superior jerarquía tiene la facultad de expedir el auto de <u>certiorari</u> de manera discrecional.[38]  Esta discreción, en nuestro ordenamiento jurídico, ha sido definida como una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera.  No significa poder actuar en una forma u otra, haciendo abstracción del resto del derecho, porque, ciertamente, eso constituiría un abuso de discreción.[39]  Con relación al abuso de discreción, este Tribunal ha expresado:

> [E]l juez, so pretexto de ejercer su discreción, no puede olvidarse de, ni relegar a un segundo plano, los mandatos y dictados de nuestra Constitución y los de las leyes, pertinentes a la cuestión en controversia, que han tenido a bien promulgar los funcionarios de las Ramas Legislativa y Ejecutiva... Los tribunales estamos autorizados a interpretar las leyes cuando, entre otras, éstas no son claras o concluyentes sobre un punto en particular; cuando el objetivo, al realizarlo, es el de suplir una laguna en la misma, o cuando, con el propósito de mitigar los efectos adversos de la aplicación de una ley a una situación en particular, la justicia así lo requiere.[40]

Con el fin de que el Tribunal de Circuito de Apelaciones pueda ejercer de una manera sabia y prudente la facultad discrecional de entender o no en los méritos de los asuntos que le son planteados mediante el recurso de <u>certiorari</u>, la Regla 40 del Reglamento de ese Tribunal señala los criterios que debe tomar en consideración al atender una solicitud de expedición de un auto de <u>certiorari</u>.[41]  Dispone la referida Regla lo siguiente:

Regla 40. Criterios para expedición del auto

El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de <u>certiorari</u> o de una orden de mostrar causa:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

---

[37] 4 L.P.R.A. sec. 22k.

[38] Cuevas Segarra, <u>op. cit.</u>, pág. 884.

[39] <u>Bco. Popular de P.R. v. Mun. de Aguadilla</u>, res. el 29 de diciembre de 1997, 144 D.P.R. ___ (1997), 97 J.T.S. 152, a la pág. 444.

[40] <u>Bco. Popular de P.R. v. Mun. de Aguadilla</u>, <u>supra</u>, págs. 444-445, citando a <u>Pueblo v. Ortega, Santiago</u>, 125 D.P.R. 203, a la pág. 214.

[41] 4 L.P.R.A. Ap. XXII-A, R. 40.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Una vez el Tribunal de Circuito de Apelaciones decide expedir el auto de <u>certiorari</u>, asume jurisdicción sobre el asunto en controversia y se coloca en posición de revisar los planteamientos en sus méritos. Asumir jurisdicción sobre un asunto, expidiendo el auto de <u>certiorari</u>, ha sido definido como la autoridad en virtud de la cual los funcionarios judiciales conocen de las causas y las deciden. Constituye la facultad de oír y resolver una causa y de un tribunal a pronunciar sentencia o resolución conforme a la ley. **Dicha jurisdicción incluye la facultad de compeler a la ejecución de lo decretado**, y puede decirse que es el derecho de adjudicar con respecto al asunto de que se trata en un caso dado.[42] (Énfasis nuestro.) Si el Tribunal de Circuito de Apelaciones asume jurisdicción sobre el asunto que tiene ante su consideración mediante la expedición de un auto de <u>certiorari</u>, por entender que así se justifica a tenor con la referida Regla 40, <u>supra</u>, cumple su función principal de revisar las decisiones del foro de instancia para asegurarse que las mismas son justas y que encuentran apoyo en la normativa establecida por este Tribunal.[43] Además, se cumple con uno de los propósitos cardinales de la Ley de la Judicatura de Puerto Rico de 1994, <u>supra</u>, de proveer la oportunidad que una decisión tomada por un solo juez en casos originados en el Tribunal de Primera Instancia pueda ser revisada por un tribunal colegiado. Por ello, se requiere que el Tribunal de Circuito de Apelaciones considere los asuntos que se le plantean con estricto rigor jurídico y con sentido de justicia.[44]

Al decidir no expedir el auto solicitado, el Tribunal de Circuito de Apelaciones no asume jurisdicción sobre el asunto y la denegatoria del mismo nada dispone en cuanto a los méritos de lo planteado. Cuando ese Tribunal determina, bajo su facultad discrecional, no entender en los méritos de los asuntos que le son planteados, debe ser sumamente cuidadoso. Los estatutos que regulan la jurisdicción o la facultad de los tribunales de atender y resolver las controversias ante sí de la ciudadanía, son de alto interés público.[45] Es nuestro deber destacar, que en nuestro sistema de derecho existe una política judicial que fomenta el mayor acceso posible de los ciudadanos a los tribunales para que sus controversias puedan ser resueltas en los méritos.[46]

Con estos principios como marco de referencia, analicemos la controversia ante nuestra consideración.

---

[42] <u>J.R.T. v. A.E.E.</u>, 133 D.P.R. 1 (1993).

[43] <u>Depto. de la Familia v. Shrivers Otero</u>, res. el 17 de abril de 1998, 98 T.S.P.R. 44, 145 D.P.R. ___ (1998), 98 J.T.S. 46.

[44] Id.

[45] <u>J.R.T. v. A.E.E</u>, <u>supra</u>.

[46] Véase <u>Echevarría Jiménez v. Sucn. Pérez Meri</u>, 123 D.P.R. 664, 673 (1989); <u>Garriga Gordils v. Maldonado Colón</u>, 109 D.P.R. 817, 822-823 (1980); <u>Arce v. Club Gallístico de San Juan</u>, 105 D.P.R. 305 (1976); <u>Acevedo v. Compañía</u>

El Estado solicitó ante el Tribunal de Circuito de Apelaciones la revisión de la resolución emitida por el Tribunal de Primera Instancia el 4 de julio de 1998, notificada a las partes 14 de septiembre de 1998. A través de esa resolución, el Tribunal de Primera Instancia resolvió que el Estado no cumplió con la sentencia emitida por ese foro, que decretó la invalidez de la confiscación. Ese Tribunal determinó que el hecho de habérsele entregado el vehículo al acreedor condicional, según fuera ordenado previamente por ese mismo Tribunal, no lo releva de la sentencia que dispuso que se lo entregara a la demandante, dueña del vehículo. En vista de que el Estado no mantenía la posesión y control del referido vehículo, se le ordenó pagar a la señora Negrón Placer el valor de tasación del mismo, más los intereses legales, a partir de la ocupación.[47] Concluyó el referido Tribunal, que de tener el Estado alguna reclamación, debía dirigir la misma contra la compañía aseguradora del vehículo confiscado.[48]

De esta determinación el Estado acudió, mediante una solicitud de _certiorari_, ante el Tribunal de Circuito de Apelaciones. Alegó, en primer lugar, que había cumplido con la sentencia emitida en el caso de impugnación de confiscación. Arguyó que el dictamen emitido por el Tribunal de Primera Instancia, relacionado con la ejecución de la sentencia, básicamente le obliga a incurrir en un doble cumplimiento. Expresó, que al obtenerse una sentencia favorable en un pleito sobre impugnación de confiscación, el Estado está en la obligación de devolver la propiedad ocupada o el importe de la fianza prestada, correspondiente al valor de la tasación de la propiedad confiscada. En el caso de autos, una vez se decretó inválida la confiscación, el Estado le devolvió el importe de la fianza prestada a Citibank, N.A. Aún así, el Tribunal de Primera Instancia determinó que el Estado no cumplió con la sentencia emitida por ese Tribunal y le ordenó pagar a la señora Negrón Placer el valor de la tasación del vehículo, con sus intereses desde el momento de la ocupación. Este proceder del Tribunal de Primera Instancia, según alegó el Estado en su recurso ante el Tribunal de Circuito de Apelaciones, le obliga a incurrir en un doble cumplimiento.

De un análisis de los autos, es evidente que la resolución dictada por el Tribunal de Primera Instancia trataba de un procedimiento posterior a su sentencia emitida el 13 de febrero de 1996. La solicitud de _certiorari_ presentada ante el Tribunal de Circuito de Apelaciones no intentó cuestionar o modificar el pronunciamiento relacionado sobre la ilegalidad de la confiscación. El Tribunal de Circuito de Apelaciones tuvo ante su consideración una controversia posterior a la sentencia emitida por el Tribunal de Primera Instancia, que trataba, en esencia, sobre la facultad del referido foro de primera instancia

---

Telefónica de P.R., 102 D.P.R. 787, 791 (1974); Ramírez de Arellano v. Srio. de Hacienda, 85 D.P.R. 823, 829 (1962).
[47] Véase Petición de _Certiorari_ ante el Tribunal de Circuito de Apelaciones, Apéndice XXXI de la Petición de _Certiorari_, págs. 65-67.

de compeler a la ejecución de lo decretado por la sentencia. Tal dictamen emitido por el Tribunal de Primera Instancia es revisable ante el Tribunal de Circuito de Apelaciones, mediante el recurso de certiorari. Por lo tanto, el Tribunal de Circuito de Apelaciones incidió al determinar que lo que se pretendía era revisar la sentencia final y firme y, en consecuencia, erró dicho foro apelativo al denegar el recurso por falta de jurisdicción. Correspondía al Tribunal de Circuito de Apelaciones expedir el auto de certiorari y evaluar, conforme a la Ley Uniforme de Confiscaciones de 1988, supra, si era correcto en derecho lo alegado por el Estado de que la resolución recurrida lo obliga al doble cumplimiento de la sentencia emitida, la cual es final y firme. Esto conlleva un detenido análisis de dicho estatuto y su aplicación, en particular, al dueño del vehículo (comprador condicional) y al acreedor condicional, dentro de las circunstancias particulares de este caso.[49]

Durante todo el transcurso de este pleito, el Tribunal de Primera Instancia tuvo conocimiento que el automóvil objeto de esta controversia, una vez se aprobó la fianza, estaba en posesión o bajo el control del acreedor condicional, Citibank, N.A., y no del Estado. Dicha posesión y control era en carácter de garantizador del vehículo objeto de confiscación y para proteger su interés propietario en el financiamiento del mismo como acreedor condicional. Ciertamente, al prestar la referida fianza el vehículo confiscado no le fue entregado al acreedor condicional en carácter de dueño del mismo, pues no lo era. De tener el acreedor condicional alguna acción contra el dueño (deudor condicional) por falta de pago de los plazos pactados en el contrato de venta condicional, tenía que instar el procedimiento adecuado para hacer valer y hacer efectiva la deuda insatisfecha. No obstante, no puede utilizar los mecanismos de la Ley Uniforme de Confiscaciones de 1988, supra, con tal propósito. El Tribunal de Primera Instancia no ordenó a Citibank, N.A. que entregara el auto a la señora Negrón Placer y que dilucidaran sus controversias relacionadas al contrato de venta condicional en un pleito separado.

Al solicitar la señora Negrón Placer la ejecución de la sentencia dictada, el Tribunal de Primera Instancia podía ordenarle a Citibank, N.A., como acreedor condicional, que le entregara el vehículo en cuestión, y de existir alguna controversia entre ellos relacionada con el acuerdo sobre el financiamiento de la compraventa del mismo, tenían que dilucidarla a través del procedimiento provisto por ley para la ejecución de su garantía. El obligar al Estado, mediante orden en ejecución de la sentencia emitida por el Tribunal de Primera

---

[48] Véase Resolución del Tribunal de Primera Instancia del 4 de julio de 1998, Apéndice XXX de la Petición de Certiorari, pág. 57.

[49] Véase Artículo 10 de la Ley Uniforme de Confiscaciones de 1988, supra. Cabe mencionar, que en los contratos de venta condicional el vendedor retiene un título formal de propiedad hasta que el bien se haya pagado en su totalidad. El comprador del bien es, en términos legales y prácticos, el dueño del mismo. La jurisprudencia ha reconocido que en los casos de ventas condicionales el verdadero dueño es el comprador y que la venta está sujeta a una condición resolutoria que priva al comprador de su título en caso de incumplimiento. M. Godreau, El Leasing Mobiliario, San Juan, Ed. Dictum, 1999, pág. 22; Berríos v. Tito Zambrana Auto, Inc., 123 D.P.R. 317 (1989); Montalvo v. Valdivieso, 38 D.P.R. 545 (1928).

Instancia en el caso de autos, a pagar el valor de tasación del vehículo más sus intereses, constituye, bajo las circunstancias particulares de este caso, un doble cumplimiento de su obligación a tenor con lo dispuesto por el Artículo 13 de la Ley Uniforme de Confiscaciones de 1988, supra, un enriquecimiento injusto en beneficio de la señora Alicia Negrón Placer, posiblemente también del Citibank, N.A., y en perjuicio de los fondos públicos.

IV

Por los fundamentos antes expuestos, procede expedir el auto de certiorari solicitado y dictar sentencia revocatoria tanto de la resolución emitida por el Tribunal de Circuito de Apelaciones, como de la resolución dictada por el Tribunal de Primera Instancia. Procede, además, ordenarle a Citibank, N.A. entregarle a la señora Alicia Negrón Placer el vehículo de motor confiscado, que se encuentra bajo su posesión y control.

Se dictará sentencia revocatoria.

EFRAÍN E. RIVERA PÉREZ
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Alicia Negrón Placer, Ramón
Negrón
        Recurridos

            v.

Secretario de Justicia,
Superintendente de la
Policía
        Peticionarios
Citibank, N.A., et al                    CC-99-62          Certiorari
        Recurridos

            v.

Hon. Secretario de Justicia,
Estado Libre Asociado de
Puerto Rico
        Peticionarios

SENTENCIA


San Juan, Puerto Rico, a 2 de mayo de 2001.

    Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se expide el auto de <u>certiorari</u> solicitado y se dicta sentencia revocando tanto la resolución emitida por el Tribunal de Circuito de Apelaciones, como la resolución dictada por el Tribunal de Primera Instancia el 4 de julio de 1998, notificada a las partes el 14 de septiembre de 1998.

    Se ordena a Citibank, N.A. entregarle el vehículo de motor marca Dodge, modelo Daytona, año 1989, tablilla AXN-570, a la señora Alicia Negrón Placer.  Cualquier controversia existente entre Citibank, N.A., como acreedor condicional, y la señora Negrón Placer, como deudora condicional, deberán dilucidarla a través del procedimiento adecuado en derecho y a tenor con lo dispuesto en la referida Opinión.


    Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Presidente señor Andréu García concurre sin opinión escrita.



                    Isabel Llompart Zeno
                Secretaria del Tribunal Supremo