Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
Panel XII

| ALLIED MANAGEMENT GROUP, INC.<br><br>Recurrida<br><br>V.<br><br>ORIENTAL BANK<br><br>Peticionario | KLCE202400941 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.<br>K AC2013-1023<br><br>Sobre:<br>DAÑOS Y PERJUICIOS |
|---|---|---|

Panel integrado por su presidenta, la Jueza Grana Martínez, el Juez Candelaria Rosa, la Jueza Rivera Pérez y la Jueza Díaz Rivera.

Grana Martínez, Jueza Ponente

**RESOLUCIÓN**

En San Juan, Puerto Rico, a 21 de octubre de 2024.

El peticionario, Oriental Bank, solicita que revisemos la Resolución en la que el Tribunal de Primera Instancia se negó a dictar sentencia sumaria a su favor por insuficiencia de prueba.

Allied Management Group Inc. (AMGI) presentó su oposición al recurso.

**I**

El tracto procesal de este caso se remonta al 19 de diciembre de 2013, cuando la recurrida presentó una demanda contra Scotiabank, en la que pidió la entrega de unos pagarés hipotecarios y una indemnización por daños y perjuicios. Posteriormente, Scotiabank fue sustituido por el peticionario.

La demanda incluyó las alegaciones siguientes. El 30 de mayo de 2007, Allied Financial Inc. (AFI) otorgó un contrato de línea de crédito con RG Premier Bank ahora Scotiabank de Puerto Rico. RG extendió a AFI una línea de crédito para que concediera financiamientos a terceros. Las partes acordaron que RG concedería a AFI adelantos de tiempo en tiempo que no excedería de tres millones trescientos mil dólares ($3,300,000.00) y en una base rotativa. AFI concedió a Villas de Costa Jobos Inc. un préstamo hipotecario por un millón doscientos mil dólares ($1,200,000.00), garantizados con dos (2) pagarés al portador uno por ochocientos mil dólares

Número Identificador

RES2024_____

($800,000.00) y el otro por cuatrocientos mil dólares ($400,000.00). Villas de Costa Jobos Inc. entregó en prenda ambos pagarés a AFI como garantía del repago del préstamo. AFI entregó a RG los pagarés aludidos como colateral por un adelanto recibido de un millón ochenta mil dólares ($1,080,000.00).

Según consta en la demanda, la recurrida, AMGI, adquirió de Villas de Costa Jobos el inmueble grabado con ambos pagarés. La recurrida asumió las obligaciones y responsabilidades sobre el balance adeudado de los dos (2) pagarés hipotecarios. El 2 de octubre de 2019, la recurrida pagó a RG un millón ochenta mil dólares ($1,080.000.00) para saldar el adelanto recibido y requirió la entrega de ambos pagarés para así poder realizar una transacción comercial. No obstante, Scotiabank se negó a entregar los pagarés, a pesar de que la deuda estaba salda. AMGI alegó que su actuación ha impedido que la recurrida pueda refinanciar sus obligaciones y disponer libremente de su propiedad para otros fines comerciales. Además, ha impedido que su presidente y accionista principal pueda liberarse de sus obligaciones personales como garantizador solidario. La recurrida pidió al tribunal que ordenara a la peticionaria la entrega de los pagarés, una indemnización de un millón doscientos mil dólares ($1,200,000.00) y el pago de costas y honorarios.

Scotiabank negó las alegaciones de la demanda y adujo que los pagarés aseguran la totalidad de la facilidad de crédito que otorgó a Allied, conforme a los acuerdos suscritos en el Mortgage Warehousing Credit Agreement y el Term Loan Agreement.

La recurrida pidió al tribunal que ordenara al banco la devolución sumaria de los pagarés y dejara pendiente la acción de daños y perjuicios. Por su parte, Scotiabank pidió la desestimación de la demanda por falta de jurisdicción sobre la materia. El TPI denegó las solicitudes de ambas partes y paralizó los procedimientos, hasta que se adjudicaran las controversias pendientes en otro caso relacionado. La recurrida acudió al Tribunal de Apelaciones y ese foro revocó al TPI. El Tribunal de Apelaciones ordenó la devolución de los pagarés y devolvió el caso al TPI para que continuara con la

acción de daños y perjuicios. Scotiabank acudió al Tribunal Supremo de Puerto Rico. Nuestro más Alto Foro judicial local: (1) reconoció la jurisdicción de los tribunales estatales para adjudicar la controversia relacionada a la titularidad de los pagarés y (2) rechazó las alegaciones que hizo el banco de falta de parte indispensable. El Tribunal Supremo de Puerto Rico confirmó al Tribunal de Apelaciones y ordenó al peticionario la devolución de los pagarés y la continuación de la acción de daños.

El 3 de noviembre de 2023, el peticionario presentó una moción de sentencia sumaria. Oriental adujo que la recurrida reclamó daños porque el gravamen hipotecario le impidió: (1) refinanciar sus obligaciones y así poder continuar sus operaciones comerciales y (2) disponer o usar libremente la propiedad hipotecada para otros fines comerciales, a (3) Rafael Portela Rodríguez liberarse de sus obligaciones personales como garantizador solidario de la corporación y (4) a AMGI y a sus principales continuar cumpliendo sus obligaciones financieras.

El peticionario alegó que ambas partes realizaron un amplio y abarcador descubrimiento de prueba. No obstante, sostuvo que la prueba sometida por la recurrida no contiene un ápice de evidencia que sustente sus alegaciones. Oriental argumentó que hay ausencia total de evidencia para demostrar que su negativa a entregar los pagarés: (1) impidió a la recurrida refinanciar sus obligaciones y continuar sus operaciones comerciales, porque la propiedad tenía que estar libre de cargas y gravámenes, (2) fue la causa próxima que impidió a la recurrida obtener un refinanciamiento, (3) impidió a la recurrida disponer o usar libremente la propiedad hipotecada para otros fines comerciales. Según Oriental, el expediente esta huérfano de evidencia: (1) de que el refinanciamiento fue denegado, (2) de intentos frustrados de usar y disponer la propiedad, (3) que sustente las alegaciones de que Rafael Portela Rodríguez no pudo liberarse de sus obligaciones personales y (4) que sustente la cuantía de los daños reclamados.

La parte recurrida se opuso, porque está en controversia: (1) la relación directa que existe entre la negativa de Oriental de entregarle los pagarés y su

imposibilidad para liberar la propiedad de los gravámenes hipotecarios y disponer de la misma para beneficio de su negocio, (2) la reducción en el valor de la propiedad y la cuantía de las pérdidas sufridas a causa de la conducta de Oriental y el (3) valor en el mercado de la propiedad gravada ilegalmente para el año 2011. La recurrida argumentó que la tasación que prevalezca determinará el precio en que pudo haber vendido la propiedad, si Oriental no se hubiese negado a entregarle los pagarés. Según la recurrida, la tasación es parte de las controversias que tienen que adjudicarse en un juicio plenario. Ambas partes presentaron otros escritos en apoyo a sus respectivas posiciones.

El TPI determinó los hechos probados a continuación:

1. El 30 de mayo de 2007, R-G Premier Bank of Puerto Rico (**R-G**) y Allied Financial, Inc. (**AFI**) suscribieron un contrato denominado *Mortgage Warehousing Credit Agreement,* en virtud del cual R-G extendió a AFI una línea de crédito comercial hasta $3,300,000. El propósito del contrato era proveer a AFI una línea de crédito que le permitiera, a su vez, realizar préstamos comerciales y residenciales a terceros. R-G se comprometió a otorgarle adelantos a AFI, de tiempo en tiempo, que no excedieran de $3,300,000 en una base rotativa. *Allied Mgmt Grp. Inc. v. Oriental Bank,* 204 DPR 374, 378-82 (2020).

2. El 26 de junio de 2007, AFI concedió a Villas de Costa Jobos, Inc. (**Costa Jobos**) un préstamo hipotecario por el principal de $1,200,000 mediante un acuerdo denominado *Non-Revolving Credit Facility Agreement.* En esa misma fecha, Costa Jobos y AFI suscribieron el *Mortgage Note Pledge Agreement,* mediante el cual Costa Jobos entregó en prenda a AFI dos pagarés hipotecarios, uno por la suma principal de $800,000 y otro por $400,000 (los **Pagarés**), como garantía de repago de las obligaciones contraídas en el contrato de préstamo hipotecario. *Id.*

3. Como garantía de los referidos pagarés hipotecarios y otros créditos accesorios, Costa Jobos constituyó una hipoteca por $800,000 y otra por $400,000 sobre una propiedad sita en el barrio Bajuras de Isabela (la **Propiedad**). Las obligaciones contraídas por las partes en el *Mortgage Warehousing Credit Agreement* fueron garantizadas por el Sr. Rafael Portela Rodríguez. Bajo los términos de este contrato, el 3 de agosto de 2007, AFI solicitó a R-G un adelanto de $1,080,000 mediante el modelo de solicitud estipulado por ambas partes, intitulado *Request for Advance.* Además, AFI entregó en garantía a R-G los dos Pagarés hipotecarios. *Id.*

4. Posteriormente, la aquí Demandante Allied Management Group, Inc. (**AMGI**) adquirió la Propiedad hipotecada por Costa Jobos y asumió las obligaciones de este último respecto al balance de la deuda evidenciada por los Pagarés. *Id.*

5. AMGI se dedica al negocio de las inversiones de bienes raíces desde su fundación en 1977. *Hecho Estipulado.*

6. El 2 de octubre de 2009 AMGI emitió un cheque a favor de R-G por la cantidad de $1,080,000 (el **Cheque**) como pago por el préstamo relacionado a la Propiedad. El 6 de octubre de 2009, el Cheque fue acreditado y, a esa fecha, el estado de cuenta de la línea de crédito de AFI con R-G reflejaba que esta no adeudaba intereses. *Allied Mgmt. Grp., Inc. v. Oriental Bank*, 2004 DPR 374, 378-82 (2020).

7. El 30 de noviembre de 2009, AFI y R-G suscribieron un *Term Loan Agreement*, que modificaba el *Mortgage Warehousing Credit Agreement* suscrito en el 2007 para convertir el financiamiento en un contrato a término, por dos años, al cabo de los cuales AFI debía saldar la cantidad adeudada en su totalidad. *Id.*

8. El 30 de abril de 2010, la Oficina del Comisionado de Instituciones Financieras (**OCIF**) cerró las operaciones de R-G y la Federal Deposit Insurance Corporation **(FDIC)** fue designada como síndico. Mediante un acuerdo entre FDIC y Scotiabank de Puerto Rico (**Scotiabank**), este último adquirió activos de R-G incluyendo los Pagarés. *Id.*

9. Según concluyeron los peritos de ambas partes, el valor en el mercado de la Propiedad al 17 de julio de 2013 era de $1,600,000.00. *Anejos 8 y 11 de la Oposición a Sentencia Sumaria.*

10. "Así las cosas, el 4 de noviembre de 2013, AMGI, que había emitido un cheque a favor de R-G por $1,080,000 en el 2009, requirió a Scotiabank la devolución de los dos pagarés hipotecarios". *Allied Mgmt. Grp., Inc. v. Oriental Bank,* 204 DPR 374, 378-82 (2020). Este fue el primer requerimiento por escrito de AMGI al banco para la entrega de los Pagarés.[1] "Junto a su petición, acompañó una carta suscrita por AFI en la que autorizaba a Scotiabank a entregar a AMGI esos pagarés. Sin embargo, Scotiabank se negó a devolverlos. Por ello, el 21 de noviembre de 2013, AMGI envió una segunda comunicación a Scotiabank requiriéndole la entrega de los pagarés. No obstante, el 26 de noviembre de 2013 Scotiabank respondió, mediante una carta, que no procedía su devolución". *Id.*

11. "Consecuentemente, el 19 de diciembre de 2013, AMGI presentó una demanda contra Scotiabank ante el Tribunal de Primera Instancia reclamando la devolución de los dos pagarés hipotecarios, que originalmente fueron dados a R-G en prenda para garantizar un adelanto de $1,080,000 mediante un contrato suscrito entre AFI y R-G. Además, AMGI exigió $1,200,000 en daños y perjuicios". *Id.*

12. El 31 de mayo de 2016, el Tribunal de Apelaciones emitió Sentencia Sumaria ordenando a Scotiabank la devolución de los Pagarés y devolviendo el caso al Tribunal de Primera Instancia para que continúe con la acción de daños y

---

[1] El Anejo 2 a la Oposición de Sentencia Sumaria no solicita la devolución del Pagaré a AMGI.

perjuicios pendiente". *Allied Mgmt. Grp., Inc. v. Scotiabank de Puerto Rico,* 2016 WL 3383368, at \*8 (TA 2016).

13. "Desde el 31 de diciembre de 2019, Scotiabank se fusionó con Oriental Bank (**Oriental** [...]), convirtiéndose este último en la entidad bancaria subsistente tras la fusión". *Allied Mgmt. Grp., Inc. v. Oriental Bank,* 204 DPR 374, 385 (2020).

14. El 30 de junio de 2020, el Tribunal Supremo confirmó la Sentencia Sumaria del TA ordenando la devolución de los Pagarés y devolviendo el caso al TPI para adjudicar la reclamación en daños por incumplimiento de contrato de prenda:

    Al examinar los hechos de este caso, es preciso mencionar que, aun cuando la obligación de R-G de entregar los pagarés hubiese surgido desde que AMGI satisfizo la deuda de AFI, no fue hasta que la parte peticionaria se negó a entregarlos que se entendería violado definitivamente el contrato de prenda. Ello, pues el pago de AMGI no extinguió el contrato, sino que causó su subrogación en la posición del acreedor. AMGI, como dueño de la propiedad hipotecada a favor de AFI y objeto de los pagarés en controversia aquí, es un tercero con interés cuyo pago de la obligación activó la subrogación. A base de estos hechos, es claro que la acción ocurrió como resultado del incumplimiento de la parte peticionaria con el contrato de prenda. Es decir, el incumplimiento no fue por parte del banco fallido o por la FDIC, sino del banco sucesor. *Allied Mgmt. Grp., Inc. v. Oriental Bank,* 204 DPR 374, 408-09 (2020).

15. En vez de devolver los Pagarés conforme al mandato del Tribunal Supremo, Oriental solicitó consignarlos y los depositó en el Tribunal el 9 de abril de 2021. Mientras los Pagarés estuvieron depositados en el Tribunal, AMGI no podía otorgar a escritura de cancelación necesaria para levantar el gravamen hipotecario que pesaba sobre la Propiedad. Mediante Orden notificada el 4 de octubre de 2021, el Tribunal ordenó la entrega de los Pagarés a AMGI. Cuya entrega se materializó al día siguiente. Sin embargo, AMGI tardó casi cuatro meses en otorgar las escrituras de cancelación de pagaré el 31 de enero de 2022. *Anejos 15 y 16 a la Oposición a Moción de Sentencia Sumaria.*

16. AMGI vendió la Propiedad a Jobos Seven, LLC por el precio de $1,685,000 mediante Escritura Número 2 de Compraventa otorgada el 22 de febrero de 2022 ante el Notario Luis F. Colón Conde. *Anejo 17 a la Oposición a Moción de Sentencia Sumaria.*

17. El gravamen hipotecario por el principal de $1,200,000 habría representado cerca del 75% (2013) o el 71% (2022) del valor de la Propiedad. [Cómputo aritmética].

No obstante, el TPI encontró que existía controversia sobre la cuantificación de los daños que el atraso de la devolución de los pagarés ocasionó a la recurrida.

El foro primario redujo la controversia a determinar cuál es el valor de la pérdida económica que la negativa del peticionario a entregar los pagaré ocasionó a la recurrida. Al TPI le quedó claro que la recurrida no presentó prueba suficiente para concluir o inferir que el incumplimiento de Scotiabank es previo al 4 de noviembre de 2013. No obstante, dio por hecho que transcurrieron ocho años y once meses desde esa fecha y el 5 de octubre de 2022, cuando ocurrió la entrega de los pagarés.

El foro recurrido advirtió que, según las alegaciones 14 y 16 de la demanda, la reclamación de daños está basada en la falta de acceso a capital y la iliquidez de la propiedad como activo. El TPI dio por hecho que la propiedad era sustancialmente ilíquida, mientras estuvo gravada por los pagarés. Según el TPI, la posibilidad de que la recurrida consiguiera un comprador mientras la propiedad tenía un gravamen del 71 o 75% de su valor, pudo incidir sobre la medida de los daños compensables. No obstante, determinó que no incide sobre la iliquidez proporcional al monto del gravamen.

El 7 de junio de 2024, el TPI declaró Sin Lugar la solicitud de sentencia sumaria del peticionario y señaló la conferencia con antelación al juicio para el 17 de septiembre de 2024.

El peticionario pidió reconsideración. No obstante, fue denegada.

Inconforme, Oriental presentó este recurso en el que alega que:

Erró el Honorable Tribunal de Primera Instancia al emitir una *Resolución* denegando la solicitud de sentencia sumaria bajo la modalidad de insuficiencia o ausencia de prueba presentada por Oriental, a pesar de que el expediente está huérfano de evidencia que sustente o propenda a sustentar los alegados daños sufridos por los recurridos en función de la retención de los pagarés hipotecarios, según el mandato del Tribunal Supremo.

Erró el Honorable Tribunal de Primera Instancia al emitir una Resolución denegando la solicitud de sentencia sumaria presentada por Oriental aplicando el estándar de adjudicación de una moción de desestimación, en lugar del estándar de adjudicación de una solicitud de sentencia sumaria bajo la modalidad de insuficiencia o ausencia de prueba, que es el que corresponde.

Erró el Honorable Tribunal de Primera Instancia al permitir, de manera *subsilente*, que los recurridos enmendaran las

alegaciones de la demanda, sin haber solicitado autorización para ello, y luego de concluido el descubrimiento de prueba.

## II.

El recurso de certiorari está regulado por nuestro ordenamiento procesal civil. En lo relacionado al referido recurso, es sabido que se define como un vehículo procesal que permite a un tribunal de mayor jerarquía revisar las decisiones de un tribunal inferior. 32 LPRA sec. 3491; *Rivera et al. v. Arcos Dorados et al.,* 212 DPR 194, 207 (2023); *800 Ponce de León v. AIG*, 205 DPR 163, 174 (2020); *IG Builders et al v. BBVAPR*, 185 DPR 307, 337 (2012). En esencia, este mecanismo procesal permite al foro revisor corregir algún error cometido por el tribunal de menor jerarquía. *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 729 (2016). El referido recurso es uno de carácter discrecional. Esta discreción, ha sido definida jurisprudencialmente "como una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera." *Negrón v. Srio. de Justicia,* 154 DPR 79, 91 (2001). Aunque la característica principal del recurso reside en el carácter discrecional del mismo, tal determinación no es irrestricta, está sujeta a los criterios señalados en la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R 52.1. Advertimos que esta Regla ha sufrido modificaciones a través del tiempo para expandir el marco discrecional que ostentan los foros revisores en la expedición del recurso.

En la actualidad, la Regla 52.1 de Procedimiento Civil, *supra,* específicamente dispone que el recurso de *certiorari* solamente será expedido:

> [p]ara revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo.

> No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia.

Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión. Cualquier otra resolución u orden interlocutoria expedida por el Tribunal de Primera Instancia podrá ser revisada en el recurso de apelación que se interponga contra la sentencia sujeto a lo dispuesto en la Regla 50 sobre los errores no perjudiciales.

32 LPRA Ap. V, R. 52.1.

Superado el análisis al amparo de la Regla 52.1 de Procedimiento Civil, *supra,* el foro apelativo deberá auscultar los criterios de la Regla 40 del Reglamento del Tribunal de Apelaciones para guiar su discreción al intervenir con la resolución u orden interlocutoria recurrida. La Regla 40 dispone:

A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

B) Si la situación de los hechos planteada es la más indicada para analizar el problema.

C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto de la apreciación de la prueba por el Tribunal de Primera Instancia.

D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, por los cuales deberán ser elevados, o de alegatos más elaborados.

E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40.

En cuanto a la facultad discrecional de denegar o expedir el auto solicitado, el tribunal, de forma comedida, puede inclinarse a expedir el recurso y adjudicarlo en sus méritos. Al tomar la referida decisión, el foro revisor asume jurisdicción sobre el asunto expuesto ante su consideración. Así pues, revisa e interviene con las decisiones del foro recurrido, para auscultar que estas sean justas y conforme a la normativa aplicable. *Negrón v. Srio. de Justicia,* supra.

Por otra parte, la Ley de la Judicatura confiere discreción a este tribunal para revisar como cuestión de derecho, las sentencias finales del Tribunal de Primera Instancia, así como las decisiones finales de los organismos y agencias administrativas y, de forma discrecional, cualquier otra resolución u orden dictada por el Tribunal de Primera Instancia. 4 LPRA sec. 24(u).

### III.

La Regla 52.1, *supra,* autoriza nuestra intervención debido a que el peticionario solicita que revisemos la denegatoria a una moción de carácter dispositivo. Sin embargo, luego de examinar detenidamente el expediente del presente caso, declinamos ejercer la misma. Las circunstancias particulares de este caso no ameritan nuestra intervención en este momento. Por esa razón lo correcto es denegar el recurso.

### IV.

Por lo antes expuesto se deniega la expedición del auto de *certiorari.*

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

El juez Candelaria Rosa está conforme con la denegatoria del auto de certiorari solicitado por razón de que la determinación atinente a la existencia de daños resultantes del retraso relativo a los pagarés del caso no resulta irrazonable a la luz del expediente, por lo que no se justifica la expedición pretendida.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones