ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| BANCO POPULAR DE PUERTO RICO<br>RECURRENTE<br><br>v.<br><br>AUTORIDAD PARA EL FINANCIAMIENTO DE LA VIVIENDA EN PUERTO RICO<br>RECURRIDO | KLRA202500257 | Revisión judicial procedente de la Autoridad para el Financiamiento de la Vivienda de Puerto Rico<br><br>Querella Núm.: 2020-01<br><br>Sobre:<br>Revisión Administrativa sobre devolución de subsidio |
| BANCO POPULAR DE PUERTO RICO<br>RECURRIDO<br><br>v.<br><br>AUTORIDAD PARA EL FINANCIAMIENTO DE LA VIVIENDA EN PUERTO RICO<br>PETICIONARIO | TA2025CE00436 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala de Humacao<br><br>Caso Núm.: HU2025CV00253<br><br>Sobre:<br>Sentencia Declaratoria |

Panel integrado por su presidente, el Juez Marrero Guerrero, el Juez Campos Pérez y la Juez Lotti Rodríguez[1].

Lotti Rodríguez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 21 de octubre de 2025.

Tenemos ante nuestra consideración dos recursos que, mediante *Resolución* emitida el 8 de octubre de 2025[2], se determinó que se atenderían de forma conjunta por estar íntimamente relacionados entre sí.

En el primer recurso, KLRA202500257, comparece el Banco Popular de Puerto Rico (en adelante, Banco o BPPR), mediante *Recurso de Revisión de Decisión Administrativa*, solicitando la

---

[1] Conforme la OATA-2025-078 del 14 de mayo de 2025, mediante la cual se asignó a la Juez Glorianne M. Lotti Rodríguez en sustitución del Hon. Roberto Rodríguez Casillas.
[2] Entrada #6 del Sistema Unificado de Manejo y Administración de Casos (SUMAC) del TA.

Número Identificador

SEN2025_____

revisión de la *Resolución* emitida por la Autoridad para el Financiamiento de la Vivienda de Puerto Rico (en adelante, Autoridad o AFV) el 14 de marzo de 2025, y notificada ese mismo día. En dicha *Resolución,* la Autoridad declaró No Ha Lugar la *Querella* presentada por el Banco y confirmó su determinación previa de requerir la devolución del subsidio concedido al Sr. Luis Felipe Rodríguez Mojica y la Sra. Milayla Díaz Nieves (en adelante, el matrimonio Rodríguez-Díaz), bajo el Programa *HOME Investment Partnership Act* (en adelante, Programa *HOME)*.

De otra parte, en el segundo recurso, TA2025CE00436, comparece la AFV y solicita que se revoque la *Resolución* emitida por el Tribunal de Primera Instancia, Sala de Humacao (en adelante, TPI o foro primario), el 16 de julio de 2025, y notificada el mismo día. En su dictamen, el foro primario declaró No Ha Lugar la *Solicitud de Desestimación por Falta de Jurisdicción* presentada por la Autoridad, concluyendo que a la agencia no se le habían delegado poderes cuasijuidicales y que, por tanto, carecía de autoridad legal para atender y adjudicar querellas.

Por los fundamentos que exponemos más adelante, expedimos el recurso de *Certiorari* asignado al alfanumérico TA2025CE00436 y confirmamos la *Resolución* recurrida. En consecuencia, se desestima el recurso KLRA202500257 por falta de jurisdicción sobre la materia.

## I.

El 14 de septiembre de 1999, el matrimonio Rodríguez-Díaz adquirió una propiedad ubicada en el Barrio Quebrada Arena del Municipio de Las Piedras, Puerto Rico.[3] En esa misma fecha, los compradores constituyeron una primera hipoteca a favor del Banco

---

[3] Escritura Núm. 157 otorgada el 14 de septiembre de 1999, en San Juan, Puerto Rico, ante el notario Manuel García Malatrasi.

y Agencia de Financiamiento de la Vivienda de Puerto Rico (hoy Autoridad para el Financiamiento de la Vivienda de Puerto Rico), por la suma principal de $42,650, con intereses al 6¾% anual y vencimiento el 1 de octubre de 2029.[4]

Asimismo, se otorgó una segunda escritura de hipoteca a favor de la Autoridad recurrida, bajo las disposiciones del Programa *HOME*, por la suma principal de $20,000, sin intereses y con vencimiento el 14 de septiembre de 2019.[5] Ambas hipotecas fueron debidamente inscritas en el Registro de la Propiedad.

En virtud del Programa *HOME*, en la escritura de segunda hipoteca se establecieron condiciones restrictivas que los deudores hipotecarios debían cumplir y que, en caso de incumplimiento, conllevaría la devolución total del subsidio recibido a la AFV. Entre ellas, se dispuso que la propiedad debía constituir la residencia principal de los deudores por un período de veinte (20) años, y que estos no podrían "vender, donar, permutar o de otro modo enajenar la propiedad sin el previo consentimiento del BANCO mediante documento."[6]

No obstante, el 13 de octubre de 2003, es decir, cuatro años después de suscribirse las escrituras, el matrimonio Rodríguez-Díaz vendió el inmueble a la Sra. Alexandra Ortiz Román (en adelante, Sra. Ortiz Román), por el precio de $70,000.[7] Para financiar la compraventa, la adquirente otorgó una escritura de hipoteca a favor de Doral Financial Corporation, por la suma principal de $56,000.[8]

---

[4] Véase Apéndice 18 del Recurso KLRA202500257, págs. 122-139. El 16 de agosto de 2012, Doral Mortgage, LLC otorgó una escritura de Cancelación de Hipoteca para cancelar la hipoteca por la suma principal de $42,650 que había sido constituida a favor de la Autoridad y que en el Registro de la Propiedad figuraba como hipoteca de primer rango. *Id.*, págs. 180-184.

[5] *Id.*, págs. 112-121.

[6] *Id.* Es preciso destacar que, según la Certificación Registral que consta en el expediente, con fecha del 28 de febrero de 2025, las condiciones restrictivas que surgen de esta escritura no constan inscritas en el Registro de la Propiedad. Véase Apéndice 27 del Recurso KLRA202500257, págs. 291-292.

[7] *Id.*, págs. 142-148.

[8] Apéndice 4 del Recurso KLRA202500257, págs. 13-34.

En esa misma fecha, la Sra. Ortiz Román otorgó una segunda hipoteca a favor de la Autoridad, por la suma principal de $15,000, sin intereses y con vencimiento el 13 de octubre de 2011.[9] Dicha hipoteca quedó sujeta a las condiciones del subsidio del Programa *La Llave para tu Hogar*, que exigían, entre otras cosas, utilizar el inmueble como residencia principal por un período de ocho (8) años, sin poder enajenarlo, y disponer la devolución del subsidio a la Autoridad en caso de incumplimiento.

En enero de 2020[10], el Banco, como tenedor legal del pagaré garantizado con la hipoteca otorgada a favor de Doral por la suma principal de $56,000, solicitó a la Autoridad una carta de autorización para cancelar la hipoteca inscrita en el Registro a su favor por la suma de $20,000, ya que esta afectaba el rango de la hipoteca de $56,000. Sin embargo, la AFV informó al Banco que, para poder cancelar la hipoteca, era necesario que el matrimonio Rodríguez-Díaz devolviera el subsidio concedido, por haber incumplido con las condiciones impuestas al vender la propiedad sin autorización de la Autoridad.[11]

Luego de varias solicitudes presentadas por el Banco solicitando se reconsiderara la determinación de la agencia que subordinaba la cancelación al reembolso del subsidio, la AFV, mediante comunicación escrita del 9 de marzo de 2020, notificó al Banco lo siguiente:

> "[P]or no haber, el participante y el titular del inmueble, cumplido con el título 24 del Código de Regulaciones Federales sección número 92.254 y habiéndose determinado el cumplimiento del término, la AFV no autorizará la cancelación de la hipoteca antes

---

[9] Apéndice 4 del Recurso KLRA202500257, págs. 36-47.
[10] En septiembre de 2016, el BPPR se había comunicado con la Autoridad para solicitar, por primera vez, la cancelación de la hipoteca. Sin embargo, no surge del expediente que el Banco realizara las gestiones pertinentes para esa fecha, ello a pesar de que la AFV le contestó requiriéndole una serie de documentos para poder dar la autorización. Véase Expediente Administrativo de la Querella.
[11] Véase Expediente Administrativo de la Querella.

referida hasta tanto no se devuelva a la AFV los $20,000.00 del subsidio otorgado."[12]

En esa misma notificación, la agencia le informó al Banco su derecho a solicitar reconsideración de la determinación y el procedimiento para hacerlo.

En consecuencia, el 25 de agosto de 2020[13], el Banco presentó una nueva solicitud de reconsideración, en la cual alegó que, con la venta de la propiedad a la Sra. Ortiz Román y la aprobación del subsidio a su favor, debía haberse evaluado el cumplimiento de las condiciones impuestas al matrimonio Rodríguez-Díaz conforme al título 24 del Código de Regulaciones Federales. Además, sostuvo que resultaba incompatible que la AFV hubiera aprobado en 2003 un nuevo subsidio a favor de la Sra. Ortiz Román mientras mantenía vigente el subsidio concedido al matrimonio Rodríguez Díaz en 1999.

La Autoridad acogió esta solicitud de reconsideración como una *Querella*, a la cual le asignó el número 2020-01, y notificó de la misma al matrimonio Rodríguez Díaz y a la propia agencia, el 4 de septiembre de 2020.[14] Posteriormente, el 4 de octubre de 2020, la AFV presentó su *Contestación a Querella*, en la que sostuvo que el subsidio otorgado a la Sra. Ortiz Román no constituía una autorización para cancelar la hipoteca de $20,000.[15] Afirmó, además, que dicho subsidio se concedió bajo otro programa —*La Llave para tu Hogar*— financiado con fondos distintos a los del Programa *HOME*, y que no era responsabilidad de la agencia, sino de los vendedores, procurar la cancelación del subsidio original obteniendo la autorización expresa de la AFV.

Tras varias incidencias procesales en el trámite administrativo, el 24 de agosto de 2022 el Banco presentó una

---

[12] Apéndice 5 del Recurso KLRA202500257, págs. 48-49.
[13] Surge del expediente administrativo que los términos para solicitar reconsideración se vieron interrumpidos por la pandemia del COVID-19.
[14] Véase *Notificación de Querella* en el Expediente Administrativo de la agencia.
[15] Véase *Contestación a Querella* en el Expediente Administrativo de la agencia.

*Solicitud de Resolución Sumaria*[16], a la cual la Autoridad no se opuso, indicando que no existían controversias de hechos materiales que impidieran resolver la querella sumariamente.[17] Sin embargo, la AFV no emitió determinación alguna respecto a si acogía o no dicha solicitud.

El 3 de marzo de 2025, sin que la agencia hubiese emitido dictamen sobre la *Querella*, el Banco presentó ante el TPI una *Demanda* de Sentencia Declaratoria, solicitando que se declarara inexigible el subsidio concedido al matrimonio Rodríguez-Díaz al amparo del Programa *HOME*, por ser incompatible con el subsidio concedido posteriormente a la Sra. Ortiz Román, y que, en consecuencia, procedía la cancelación de la hipoteca.[18]

De forma paralela, el 14 de marzo de 2025, luego de presentada la *Demanda*, la Autoridad emitió su *Resolución* de la *Querella* Núm. 2020-01, en la que concluyó que el matrimonio Rodríguez-Díaz había incumplido con las condiciones restrictivas del Programa *HOME*; que la otorgación de un subsidio posterior bajo el Programa *La Llave para tu Hogar* no constituía una autorización implícita para cancelar la hipoteca anterior; y que los deudores debían reembolsar los $20,000 del subsidio para que pudiera procederse con la cancelación.[19]

El 28 de marzo de 2025, el BPPR presentó una *Solicitud de Determinaciones de Hechos Adicionales, Inhibición y Reconsideración*[20], la cual fue declarada No Ha Lugar por la AFV mediante *Resolución* emitida el 4 de abril de 2025.[21]

---

[16] Apéndice 18 del Recurso KLRA202500257, págs. 93-111.
[17] Véase *Replica a Solicitud de Resolución Sumaria* presentada por la AFV el 26 de septiembre de 2022; Apéndice 22 del Recurso KLRA202500257, págs. 193-203.
[18] Entrada #1 del SUMAC del TPI.
[19] Apéndice 2 del Recurso KLRA202500257, págs. 4-10.
[20] Apéndice 28 del Recurso KLRA202500257, págs. 293-299.
[21] Apéndice 1 del Recurso KLRA202500257, págs. 1-3.

Inconforme, el 5 de mayo de 2025, el Banco presentó el *Recurso de Revisión de Decisión Administrativa*, al que se le asignó el alfanumérico KLRA202500257, solicitando la revisión de la *Resolución* emitida por la Autoridad el 14 de marzo de 2025. En su escrito, el BPPR señaló el siguiente error:

**ERRÓ LA AUTORIDAD AL RESOLVER QUE NO AUTORIZÓ Y CONSINTIÓ LA COMPRAVENTA DEL MATRIMONIO RODRÍGUEZ-DÍAZ A LA SRA. ORTIZ ROMÁN Y ACTÚA CONTRA SUS PROPIOS ACTOS.[22]**

Por otra parte, ya presentado el primer recurso que nos ocupa, el 22 de mayo de 2025, la AFV presentó en el TPI una *Solicitud de Desestimación por Falta de Jurisdicción*, argumentando que el tribunal carecía de jurisdicción porque ya se había presentado el *Recurso de Revisión de Decisión Administrativa* ante este foro y porque el Banco debía agotar los remedios administrativos antes de acudir al foro judicial mediante su *Demanda*.[23]

El 11 de junio de 2025, el BPPR presentó su *Oposición a Desestimación*, alegando que la Autoridad carecía de poderes cuasijudiciales y, por ende, no tenía facultad para ventilar querellas.[24] Añadió que, aun si se entendiera que la AFV tenía tal facultad, no era necesario agotar los remedios administrativos porque en el caso concurrían todas las excepciones reconocidas a la doctrina.

Así las cosas, el 16 de julio de 2025, el TPI emitió su *Resolución*, mediante la cual declaró No Ha Lugar la *Solicitud de Desestimación por Falta de Jurisdicción* presentada por la Autoridad.[25] En su análisis, el foro primario concluyó que la ley orgánica de la AFV no contiene una delegación expresa que le confiera poderes cuasijudiciales, por lo que la agencia carece de

---

[22] El 12 de junio de 2025, la AFV presentó su *Alegato de la Parte Recurrida*.
[23] Entrada #11 del SUMAC del TPI.
[24] Entrada #13 del SUMAC del TPI.
[25] Entrada #14 del SUMAC del TPI.

autoridad legal para atender y adjudicar querellas. Añadió que, en todo caso, cuando la AFV actúa como parte interesada en el procedimiento, se configura un conflicto de interés inherente a su propio diseño reglamentario.

El 30 de julio de 2025, la Autoridad presentó una solicitud de reconsideración de la determinación emitida por el TPI argumentando que su ley habilitadora, junto con otras leyes y resoluciones previas, le confieren autoridad para reglamentar y adjudicar controversias relacionadas con programas de vivienda como el Programa *HOME*.[26] Reiteró, además, que procedía desestimar la demanda por falta de jurisdicción, al existir un procedimiento administrativo vigente ante este foro.

Posteriormente, presentado el escrito en *Oposición a Solicitud de Reconsideración* por parte del Banco[27], el 13 de agosto de 2023, el TPI declaró No Ha Lugar a la reconsideración presentada por la Autoridad.[28]

Aún inconforme, el 11 de septiembre de 2025, la AFV presentó su *Petición de Certiorari*, en la cual alegó la comisión de los siguientes errores:

> **PRIMER SEÑALAMIENTO DE ERROR: ERRÓ EN DERECHO Y ABUSÓ DE SU DISCRECIÓN EL TRIBUNAL DE PRIMERA INSTANCIA AL EVADIR APLICAR LA NORMA INTERPRETATIVA ESTABLECIDA POR NUESTRO ORDENAMIENTO JURÍDICO AL MOMENTO DE EVALUAR LOS REGLAMENTOS ADMINISTRATIVOS Y QUE CONCEDEN FACULTAD A LA AFVPR DE REALIZAR PROCESOS CUASI-ADJUDICATIVOS.**
>
> **SEGUNDO SEÑALAMIENTO DE ERROR: ERRÓ EN DERECHO Y ABUS[Ó] DE SU DISCRECIÓN EL TRIBUNAL DE PRIMERA INSTANCIA AL CONCLUIR QUE LA LEY HABILITADORA DE LA AFVPR NO TENÍA UNA DELEGACIÓN EXPRESA DE PODERES CUASI JUDICIALES, LA CUAL IMPEDÍA QUE LLEVARA PROCEDIMIENTOS CUASI-**

---

[26] Entrada #15 del SUMAC del TPI.
[27] Entrada #17 del SUMAC del TPI.
[28] Entrada #18 del SUMAC del TPI.

**ADJUDICATIVOS, ASÍ REGLAMENTADOS POR ÉSTA.**

**TERCER SEÑALAMIENTO DE ERROR: ERRÓ EN DERECHO Y ABUSÓ DE SU DISCRECIÓN EL TRIBUNAL DE PRIMERA INSTANCIA AL CONCLUIR QUE LA CONTROVERSIA VERSABA ÚNICAMENTE SOBRE UN PROCEDIMIENTO *IN REM,* LA ALEGADA EXISTENCIA DE UN ASIENTO REGISTRAL INEXACTO, POR LO CUAL LE CORRESPONDÍA A ÉSTE DIRIMIR LA CONTROVERSIA, OBVIANDO LAS DISPOSICIONES FEDERALES QUE REGULAN EL PROGRAMA HOME Y LA LEY DE INCENTIVOS QUE ADMINISTRA LA AFVPR.**

**CUARTO SEÑALAMIENTO DE ERROR: ERRÓ EN DERECHO EL TRIBUNAL DE PRIMERA INSTANCIA AL HACER CASO OMISO AL PLANTEAMIENTO DE FALTA DE JURISDICCIÓN SOBRE LA MATERIA Y POR NO AGOTARSE LOS REMEDIOS ADMINISTRATIVOS PUESTO QUE LA MISMA CONTROVERSIA SE ENCUENTRA SOMETIDA PARA ADJUDICACIÓN ANTE EL TRIBUNAL DE APELACIONES.**

**QUINTO SEÑALAMIENTO DE ERROR: ERRÓ EN DERECHO EL TRIBUNAL DE PRIMERA INSTANCIA AL CONCLUIR QUE LA AFVPR NO TENÍA FACULTAD PARA LLEVAR UN PROCEDIMIENTO ADJUDICATIVO POR SER UNA PARTE CON INTERÉS EN EL PROCEDIMIENTO, LO QUE PLANTEA UN CONFLICTO DE INTERÉS.**

En síntesis, la AFV alega que el foro primario invadió la jurisdicción primaria de la agencia; que la ley orgánica de la Autoridad, junto con los reglamentos aplicables, le confieren facultades cuasijudiciales para atender y resolver querellas relacionadas con los programas que administra. Sostiene, además, que la *Demanda* de Sentencia Declaratoria presentada por BPPR constituye una interferencia indebida con un proceso administrativo pendiente, y que el tribunal de instancia erró al asumir jurisdicción sobre una materia que corresponde resolver a la agencia. En consecuencia, solicita que este foro revoque la *Resolución* impugnada, desestime la acción judicial presentada por BPPR y reafirme la competencia adjudicativa de la AFV para resolver la controversia administrativa surgida de la *Querella* Núm. 2020-01.

Por su parte, el 6 de octubre de 2025, el BPPR presentó su *Alegato de la parte recurrida*[29] en el que sostiene que la Autoridad carece de facultades cuasijudiicales pues la ley habilitadora de la AFV no contiene delegación expresa de poderes adjudicativos y que la agencia no puede atribuirse jurisdicción mediante un reglamento. Alega, además, que la AFV actuó *ultra vires* al resolver una querella en la que era parte interesada, lo cual configura un conflicto de interés y viola el debido proceso de ley. Sostiene que, en todo caso, la controversia sobre la corrección de un asiento registral es de naturaleza judicial, por lo que corresponde al TPI conocerla.

El BPPR expone también que acudió al tribunal mediante sentencia declaratoria debido a la dilación excesiva de la AFV en resolver la querella (más de dos años) y que ello activa las excepciones al agotamiento de remedios administrativos dispuestas en la Sección 4.3 de la Ley de Procedimiento Administrativo Uniforme, 3 LPRA sec. 9673. Por tanto, solicita que se confirme la *Resolución* del TPI que concluyó que la AFV no tiene poder adjudicativo y solicitó que el caso se consolide con el *Recurso de Revisión de Decisión Administrativa* (KLRA202500257) para evitar resoluciones contradictorias sobre la misma controversia.

Así las cosas, el 8 de octubre de 2025, este tribunal emitió su *Resolución* en la que determinamos que ambos recursos se atenderían en conjunto.

Con el beneficio de la comparecencia de las partes, el Derecho y la jurisprudencia aplicable, estamos en posición de resolver.

**II.**

**A. *Certiorari***

El recurso de *certiorari* es un mecanismo procesal de carácter discrecional que faculta a un tribunal de mayor jerarquía a revisar

---

[29] Entrada #5 del SUMAC del TA.

las decisiones emitidas por un tribunal inferior. *BPPR v. SLG Gómez-López*, 213 DPR 314, 336 (2023); *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194, 207 (2023); *Torres González v. Zaragoza Meléndez*, 211 DPR 821, 846-847 (2023); *Caribbean Orthopedics v. Medshape et al.*, 207 DPR 994, 1004 (2021). "La característica distintiva de este recurso se asienta en la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos". *BPPR v. SLG Gómez-López, supra*, pág. 337; *Rivera et al. v. Arcos Dorados et al., supra*, pág. 209; *IG Builders et. al. v. BBVAPR*, 185 DPR 307, 338 (2012). Esta discreción se ha definido como una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera. *Pueblo* v. *Rivera Montalvo*, 205 DPR 352, 373 (2020); *Negrón* v. *Srio de Justicia*, 154 DPR 79, 91 (2001). Sin embargo, la discreción para expedir el recurso no es irrestricta, ni autoriza al tribunal a actuar de una forma u otra en abstracción del resto del Derecho. *Pueblo v. Rivera Montalvo*, supra, pág. 372 (citando a Negrón v. Srio. De Justicia, supra; *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 728-729 (2016).

Con el fin de que podamos ejercer de manera sabia y prudente la facultad discrecional de entender o no en los méritos de los asuntos que nos son planteados mediante el recurso de *certiorari*, la Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendado, *In re Aprob Enmdas. Reglamento TA*, 2025 TSPR 42, 215 DPR ___ (2025), R. 40, nos señala los criterios que debemos considerar al atender una solicitud de expedición de un auto de *certiorari*. En lo pertinente, la Regla 40 dispone lo siguiente:

> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. 4 LPRA Ap. XXII-B, R. 40.

Ahora bien, ninguno de los criterios antes citados es determinante, por sí solo, para este ejercicio y no constituye una lista exhaustiva. *García v. Padró*, 165 DPR 324, 335 esc. 15 (2005) (citando a H. Sánchez Martínez, *Derecho Procesal Apelativo*, Hato Rey, Lexis-Nexis de Puerto Rico, 2001, pág. 560).

### B. Jurisdicción de los tribunales

La jurisdicción es el poder o autoridad de un tribunal para considerar y decidir casos y controversias. *R&B Power, Inc. v. Junta de Subastas ASG*, 213 DPR 685, 698 (2024); *Pueblo v. Torres Medina*, 211 DPR 950, 958 (2023); *Cobra Acquisitions v. Mun. de Yabucoa et al.*, 210 DPR 384, 394 (2022); *Ayala Hernández v. Consejo Titulares*, 190 DPR 547, 559 (2014); *DACo v. AFSCME*, 185 DPR 1, 12 (2012). De ordinario, los tribunales en Puerto Rico poseen jurisdicción general para atender cualquier causa de acción que presente una controversia propia para adjudicación, salvo que no tengan jurisdicción sobre la materia. *Beltrán Cintrón et al. v. ELA et al.*, 204 DPR 89, 101 (2020); *Rodríguez Rivera v. De León Otaño*, 191 DPR 700, 708 (2014).

La jurisdicción sobre la materia es la capacidad para atender y resolver una controversia, la cual solo puede ser limitada por

disposición legislativa. *Beltrán Cintrón et al. v. ELA et al.*, *supra*; *Rodríguez Rivera v. De León Otaño*, *supra*, págs. 708-709. La ausencia de jurisdicción sobre la materia:

> "(1) no es susceptible de ser subsanada; (2) las partes no pueden voluntariamente conferírsela a un tribunal como tampoco puede éste arrogársela; (3) conlleva la nulidad de los dictámenes emitidos; (4) impone a los tribunales el ineludible deber de auscultar su propia jurisdicción; (5) impone a los tribunales apelativos el deber de examinar la jurisdicción del foro de donde procede el recurso, y (6) puede presentarse en cualquier etapa del procedimiento, a instancia de las partes o por el tribunal *motu proprio*." *Beltrán Cintrón et al. v. ELA et al.*, *supra*; *Fuentes Bonilla v. ELA et al.*, 200 DPR 364, 372-373 (2018).

Por otro lado, es principio reiterado que los tribunales estamos llamados a ser fieles guardianes de nuestra jurisdicción, incluso cuando ninguna de las partes invoque tal defecto. *R&B Power, Inc. v. Junta de Subastas ASG*, *supra*, pág. 698; *Ruiz Camilo v. Trafon Group, Inc.*, 200 DPR 254, 268 (2018). Nuestro Máximo Foro ha sido enfático en que la ausencia de jurisdicción es un defecto insubsanable. *Shell Chemical Yabucoa, Inc. v. Santos Rosado*, 181 DPR 109, 112 (2012).

Así pues, en todo caso, los foros primarios y apelativos deben analizar si poseen jurisdicción para atender las controversias presentadas. *Mun. San Sebastián v. QMC Telecom*, 190 DPR 652 (2014). Si un tribunal carece de jurisdicción lo procedente es la desestimación del caso sin entrar en los méritos de la controversia. *R&B Power, Inc. v. Junta de Subastas ASG*, *supra*; *Mun. San Sebastián v. QMC Telecom*, *supra*.

### C. Delegación de poderes a las agencias

Una vez delimitado el alcance de la jurisdicción judicial, corresponde examinar la fuente y extensión de la autoridad conferida a las agencias administrativas. La Constitución de Puerto Rico le otorga a la Asamblea Legislativa la facultad de crear, consolidar o reorganizar departamentos ejecutivos y definir sus

funciones. Art. III, Sec. 16, Const. ELA, LPRA, Tomo I. Históricamente, la Asamblea Legislativa ha delegado a las agencias administrativas adscritas al Poder Ejecutivo una serie de facultades, ya sea mediante su ley orgánica o a través de leyes especiales. *R&B Power, Inc. v. Junta de Subastas ASG, supra,* pág. 700; *FCPR v. ELA et al.*, 211 DPR 521, 535 (2023); *JP v. Frente Unido I*, 165 DPR 445, 469 (2005); véase, también, *Sánchez v. Depto. Vivienda,* 184 DPR 95, 120-123 (2011). El propósito principal de esta delegación de poderes es permitir que las agencias lleven a cabo la tarea específica delegada con la flexibilidad y conocimiento especializado que les caracteriza. *Caribe Comms., Inc. v. PRTCo,* 157 DPR 203, 211-212 (2002).

No obstante, si bien la Asamblea Legislativa posee amplia facultad para delegar poderes a las agencias, dicha delegación debe venir acompañada de "normas adecuadas, pautas, estándares, criterios, o principios inteligibles o aquellas garantías o salvaguardas procesales y sustantivas que sirvan de guía a la delegación y que delimiten sus facultades, para evitar que las actuaciones de los entes administrativos resulten arbitrarias o caprichosas." *Domínguez Castro et al. v. ELA I,* 178 DPR 1, (2010).

La ley habilitadora, por su parte, constituye el instrumento legal que otorga y delega a la agencia administrativa las facultades necesarias para actuar conforme al propósito que persigue la legislación que la crea. *Caribe Comms., Inc. v. PRTCo, supra,* pág. 211. Dentro de esas facultades delegadas, a las agencias se le pueden otorgar dos poderes esenciales: el de reglamentar —al ejercer funciones cuasilegislativas— y el de adjudicar controversias —al ejercer funciones cuasijudiciales dentro de su pericia institucional—. *Tricoche Matos v. KMA*, 2025 TSPR 92, 216 DPR

_____ (2025); *R&B Power, Inc. v. Junta de Subastas ASG, supra*; *Caribe Comms., Inc. v. PRTCo, supra*, pág. 214.

Asimismo, "cuando se delega una función específica a una agencia, esta no puede excederse de los límites establecidos expresa o implícitamente en la ley o por clara implicación de ésta. Igualmente, los tribunales no podemos expandir el ámbito de acción que estableció el legislador." *R&B Power, Inc. v. Junta de Subastas ASG, supra*, págs. 700-701; *Yiyi Motors, Inc. v. ELA*, 177 DPR 230, 247 (2009).

### D. Jurisdicción de las agencias administrativas

Para analizar la jurisdicción que posee una agencia administrativa respecto a un asunto particular, es necesario examinar el poder que la Asamblea Legislativa —a través de su ley habilitadora— le delegó para reglamentar o adjudicar los derechos y obligaciones de quienes están bajo su dirección. *Ayala Hernández v. Consejo Titulares, supra*, pág. 559; D. Fernández Quiñones, *Derecho administrativo y ley de procedimiento administrativo uniforme*, Colombia, Forum, 2013, págs. 35-36. Ello responde al principio de que las agencias administrativas solamente pueden ejercer los poderes que su ley habilitadora expresamente les ha otorgado y aquellos que sean indispensables para llevar a cabo su encomienda primordial. *Col. Médicos et als. v. Com. Seguros et al.*, 201 DPR 362, 372 (2018), citando a *Depto. Justicia et al. v. Jiménez et al.*, 199 DPR 293, 309 (2017), *DACo v. AFSCME*, 185 DPR 1, 12 (2012), *Raimundi v. Productora*, 162 DPR 215, 224 (2004).

Una agencia administrativa no puede asumir jurisdicción sobre una actividad, materia o conducta cuando no está claramente autorizada por ley. *Col. Médicos et als. v. Com. Seguros et al., supra*; *Ayala Hernández v. Consejo Titulares, supra*; *DACo v. AFSCME, supra*, págs. 2-3. Así, para determinar la validez de una actuación o

reglamentación de una agencia administrativa, debe evaluarse: (1) si la actuación administrativa está autorizada por ley; (2) si se delegó el poder de reglamentación; (3) si la reglamentación promulgada está dentro de los poderes delegados; (4) si al aprobarse el reglamento se cumplió con las normas procesales de la ley orgánica; y (5) si la reglamentación es arbitraria o caprichosa. *Ayala Hernández v. Consejo Titulares, supra*, pág. 560.

Las agencias administrativas están obligadas a ejercer sus funciones dentro de los límites que impone su ley habilitadora, sin apartarse de ella, aun cuando pretendan alcanzar fines que aparenten ser legítimos. *Id.* En ese sentido, ni la necesidad administrativa ni consideraciones de conveniencia pueden sustituir a la ley como fuente de autoridad para el ejercicio de poderes cuasilegislativos o cuasiadjudicativos. *Id.; DACo v. AFSCME, supra*, pág. 12; *Amieiro González v. Pinnacle Real Estate*, 173 DPR 363, 372 (2008); *Raimundi v. Productora, supra*, pág. 225. De igual modo, nuestro Tribunal Supremo ha reiterado que **toda duda respecto a la existencia de tales facultades debe resolverse en contra de su ejercicio**. *Id.* (Énfasis nuestro). En consecuencia, toda actuación administrativa que exceda los poderes que le han sido delegados expresa o implícitamente por mandato legislativo será *ultra vires* y, por ende, nula. *FCPR v. ELA et al., supra*; *Raimundi v. Productora, supra*, pág. 228.

## E. Poderes delegados a la Autoridad para el Financiamiento de la Vivienda de Puerto Rico

Establecido el marco general sobre la jurisdicción y la delegación de poderes a las agencias administrativas, procede examinar las facultades específicas que la Asamblea Legislativa confirió a la Autoridad para el Financiamiento de la Vivienda de Puerto Rico mediante su ley habilitadora.

La Ley Núm. 103 de 11 de agosto de 2001, según enmendada, conocida como la Ley de la Autoridad para el Financiamiento de la Vivienda de Puerto Rico, 7 LPRA sec. 924 *et seq.*, constituye la ley habilitadora mediante la cual la Asamblea Legislativa creó la AFV como una corporación pública subsidiaria del Banco Gubernamental de Fomento para Puerto Rico. Según surge de su Exposición de Motivos, la Ley Núm. 103-2001 tuvo como propósito consolidar y coordinar en un solo organismo las funciones gubernamentales relacionadas con el financiamiento, desarrollo, rehabilitación y adquisición de viviendas de interés social, así como la administración de programas de subsidio, seguros hipotecarios y proyectos de vivienda pública o privada dirigidos a familias de ingresos bajos o moderados. La Ley dispuso la disolución del Banco y Agencia de Financiamiento de la Vivienda de Puerto Rico (Banco de la Vivienda), creado bajo la Ley Núm. 146 de 30 de junio de 1961, y la transferencia de todas sus funciones, poderes, obligaciones, contratos y activos a la AFV. 7 LPRA sec. 924 nota.

De su texto se desprende que la AFV asumió amplias facultades administrativas y financieras, entre ellas la capacidad de adquirir y disponer de bienes, emitir y administrar instrumentos de deuda, celebrar contratos y acuerdos, transferir activos y pasivos del antiguo Banco de la Vivienda, adoptar reglamentos internos y coordinar programas de vivienda con otras entidades públicas y privadas. 7 LPRA sec. 926. Estas atribuciones le permiten operar como un instrumento de política pública en atención a los asuntos de vivienda y financiamiento, pero dentro de los límites de la delegación legislativa.

Posteriormente, la AFV adoptó el Reglamento Núm. 8627 del 6 de agosto de 2015, que estableció un marco formal para la tramitación y adjudicación de querellas administrativas ante la AFV.

Según surge del texto del Reglamento la autoridad legal por la cual se adopta es la Ley Núm. 170 del 12 de agosto de 1988, conocida como la Ley de Procedimiento Administrativo del Estado Libre Asociado de Puerto Rico, hoy derogada por la Ley Núm. 38 de 30 de junio de 2017, según enmendada.

Asimismo, en su Artículo I dispone que la Autoridad adoptó este reglamento para garantizar la resolución justa, rápida y económica de las querellas presentadas ante o por la Autoridad. Art. I Reglamento 8627. El reglamento concede a la AFV competencia para recibir, investigar y adjudicar querellas, celebrar vistas administrativas, imponer multas y sanciones y emitir resoluciones finales revisables judicialmente, a través de funcionarios designados como jueces administrativos u oficiales examinadores.

Mediante este reglamento la AFV asumió facultades cuasijudiciales para resolver controversias relacionadas con los programas y leyes que administra, incluyendo la emisión de órdenes, imposición de sanciones y adjudicación de derechos u obligaciones dentro del marco procesal dispuesto por la Ley Núm. 170-1988.

Por otro lado, debemos recordar que, al interpretar el alcance de los poderes delegados a una agencia administrativa, no se debe limitar el análisis a una interpretación restrictiva de su estatuto habilitador o, en este caso, de su reglamento. *Ayala Hernández v. Consejo Titulares, supra,* pág. 561; *DACo v. Fcia. San Martín,* 175 DPR 198, 203-204 (2009). Por ello, resulta necesario auscultar en las disposiciones legales relacionadas a los organismos predecesores a la Autoridad para evaluar si en efecto existen tales poderes. Veamos.

**i.      Ley Núm. 17 del 23 de septiembre de 1948**

La Ley Núm. 17 de 23 de septiembre de 1948, según enmendada, conocida como la Ley del Banco Gubernamental de Fomento para Puerto Rico, 7 LPRA sec. 551 *et seq.*, creó una corporación pública e instrumentalidad gubernamental del Estado Libre Asociado de Puerto Rico con el fin de asistir al Gobierno en sus deberes fiscales y promover el desarrollo económico e industrial del país. 7 LPRA sec. 551. A través de la Carta Constitucional del Banco se le otorgó personalidad jurídica propia, existencia perpetua y capacidad para demandar y ser demandada, así como para realizar los actos financieros, contractuales y administrativos necesarios para el cumplimiento de sus propósitos institucionales. 7 LPRA sec. 552.

En virtud de su ley habilitadora, el Banco Gubernamental de Fomento recibió amplias facultades de naturaleza fiscal, financiera y administrativa. *Id.* Entre ellas, las de actuar como agente fiscal y pagador del Estado Libre Asociado y de sus agencias y municipios; servir como depositario o fideicomisario de fondos públicos; prestar dinero al Estado, a sus instrumentalidades y a entidades privadas cuando el fin fuese promover la economía o industrialización de Puerto Rico; invertir fondos en obligaciones gubernamentales o corporativas; emitir bonos, pagarés y otras obligaciones; adquirir y enajenar bienes; crear subsidiarias —como la Autoridad para el Financiamiento de la Vivienda y el Fondo para el Desarrollo del Turismo—; y adoptar reglamentos internos para la administración de sus negocios. *Id.*

Si bien la ley le confirió al Banco amplios poderes financieros y de gestión pública, no le otorgó facultades adjudicativas ni cuasijudiciales. Su función primordial consistía en servir como agente financiero del Gobierno y como instrumento para dirigir recursos, fomentar la inversión y garantizar la estabilidad fiscal. En

consecuencia, el Banco Gubernamental de Fomento carecía de autoridad para resolver controversias o adjudicar derechos u obligaciones entre partes privadas o entre particulares y el Estado, limitándose su actuación a la esfera administrativa, económica y fiduciaria.

### ii.    Ley Núm. 146 del 30 de junio de 1961

La Ley Núm. 146 de 30 de junio de 1961, conocida como la Ley del Banco y Agencia de Financiamiento de la Vivienda de Puerto Rico —posteriormente derogada por la Ley Núm. 103-2001— tuvo como propósito crear una corporación pública, adscrita al Gobierno del Estado Libre Asociado y como subsidiaria de la Corporación de Renovación Urbana y Vivienda de Puerto Rico. Su objetivo principal era impulsar programas de vivienda para familias de ingresos bajos o moderados, canalizando recursos económicos y promoviendo la construcción de hogares accesibles conforme a la política pública gubernamental. 7 LPRA secs. 901, 910.

A través de dicha ley, se estableció el Banco y Agencia de Financiamiento de la Vivienda de Puerto Rico como instrumentalidad gubernamental con personalidad jurídica propia, capaz de demandar y ser demandada, y con amplios poderes administrativos y financieros. 7 LPRA sec. 910. Entre ellos, se le facultó para otorgar préstamos y financiar proyectos de vivienda; adquirir, poseer y enajenar bienes muebles e inmuebles; emitir bonos y otras obligaciones para recibir fondos; establecer y administrar programas de ahorro y préstamo; celebrar contratos con entidades públicas o privadas; y adoptar reglamentos internos necesarios para ejecutar sus fines. *Id.*

Sin embargo, de la lectura integral de la Ley Núm. 146-1961 se desprende que no se le otorgaron facultades adjudicativas o cuasijudiciales a la agencia. Su autoridad se limitaba al ámbito

administrativo y financiero, dirigida a implementar programas y medidas de financiamiento de vivienda, mas no a resolver controversias entre partes ni a imponer sanciones o determinar derechos u obligaciones de los ciudadanos. En consecuencia, sus funciones eran esencialmente ejecutivas y de gestión, subordinadas a la dirección y política pública establecida por el Secretario de la Vivienda, careciendo de facultad para adjudicar reclamaciones o controversias de naturaleza judicial o administrativa.

### iii.     Resolución Núm. 4023 del 16 de noviembre de 1977

La Resolución Núm. 4023 del 16 de noviembre de 1977, según enmendada por las Resoluciones Núm. 4107, 5143, 5171, 5338, EC-950, EC-1019 y 7897 del Banco Gubernamental de Fomento para Puerto Rico, creó la Corporación para el Financiamiento de la Vivienda de Puerto Rico como subsidiaria del Banco y como una instrumentalidad gubernamental independiente del Estado Libre Asociado de Puerto Rico. Su finalidad fue fomentar el desarrollo de la economía de Puerto Rico estimulando la industria de la construcción y promoviendo el acceso a viviendas seguras, decentes y asequibles para personas y familias de ingresos bajos o moderados, contribuyendo así al desarrollo económico del país.

A través de esta resolución y sus enmiendas, se le delegaron a la Corporación amplios poderes de carácter financiero y administrativo, tales como emitir bonos, otorgar préstamos y garantías, adquirir y enajenar bienes, e intervenir en programas federales de subsidio de vivienda (como la Sección 8 del *US Housing Act*). Del mismo modo, la Resolución Núm. 4023 reconoció expresamente la autonomía administrativa y corporativa de la entidad, pero mantuvo su vínculo funcional con el Banco Gubernamental de Fomento. Se le concedió capacidad para demandar y ser demandada, adoptar reglamentos internos y

contratar con agencias federales o estatales, pero se estableció que sus deudas y obligaciones no comprometerían el crédito ni la responsabilidad del Estado Libre Asociado ni del propio Banco.

Así, aunque la Resolución Núm. 4023 otorgó a la Corporación poderes extensos para financiar, garantizar y administrar programas de vivienda, de su texto no se desprende la concesión de facultades adjudicativas o cuasijudiciales. Su función era ejecutiva y de gestión financiera, centrada en la administración y promoción de programas de vivienda, sin autoridad para resolver controversias o determinar derechos entre partes.

### iv.    Programa *HOME*

El Programa *HOME* —regulado en el Título 24 del Código de Regulaciones Federales, Parte 92— tiene como finalidad fomentar la colaboración entre los sectores públicos y privados para ampliar la oferta de vivienda segura, digna y asequible para familias de ingresos bajos y moderados. 24 CFR part 92 sec. 92.1. A través de este programa, el Departamento Federal de Vivienda y Desarrollo Urbano (HUD) asigna fondos a los gobiernos estatales y locales, denominados jurisdicciones participantes (PJ), para la adquisición, rehabilitación, construcción de vivienda y otorgamiento de asistencia de renta. *Id.*

Las jurisdicciones participantes, como lo es la AFV, deben administrar los fondos conforme a un plan consolidado aprobado por HUD y pueden canalizar la ayuda en diversas formas, incluyendo préstamos, subsidios, inversiones de capital o asistencia directa a inquilinos. *Id.* Asimismo, están obligadas a cumplir con las normas federales de elegibilidad, supervisión, auditoría y uso de fondos, y a mantener acuerdos escritos con los beneficiarios o subreceptores para asegurar el cumplimiento de los requisitos del programa. 24 CFR part 92 sec. 92.504.

En particular, la sección 92.504 establece que el PJ es responsable de administrar el programa, supervisar el cumplimiento contractual y tomar medidas correctivas cuando surjan problemas de ejecución. Esto incluye, por ejemplo, reclamar la devolución de fondos, suspender desembolsos o revisar el cumplimiento de subreceptores. *Id.* Las jurisdicciones participantes tienen la facultad de exigir el cumplimiento de las condiciones impuestas a los beneficiarios de fondos *HOME*, mediante instrumentos jurídicos tales como gravámenes, convenios o restricciones reales inscritas que le otorgan el derecho a requerir el cumplimiento específico ("*right to require specific performance*"). *Id.*

Dichas facultades son, en esencia, de naturaleza administrativa y contractual. Están orientadas a la supervisión, fiscalización y recuperación de fondos cuando se incumplen las condiciones del programa, pero no confieren un poder adjudicativo para resolver controversias o imponer sanciones por incumplimiento de las condiciones restrictivas del Programa *HOME.*

Cabe destacar, sin embargo, que, si una jurisdicción participante incumple con los requisitos del programa, HUD puede imponer medidas correctivas, reducir los fondos asignados, revocar su designación o iniciar un procedimiento formal conforme al 24 CFR parte 26, que regula los procesos ante jueces administrativos. 24 CFR part 92 sec. 92.552. En otras palabras, el poder sancionador y adjudicativo de HUD se ejerce directamente sobre las jurisdicciones participantes, no sobre los beneficiarios individuales del programa.

Cuando el incumplimiento proviene de un beneficiario individual o entidad receptora del Programa *HOME,* el PJ debe actuar conforme a los acuerdos escritos exigidos en la sección 92.504(c). Dichos acuerdos deben prever mecanismos para

recuperar fondos, ejecutar gravámenes o iniciar procedimientos judiciales en caso de incumplimiento con las condiciones de asequibilidad o uso. Si el beneficiario no corrige el incumplimiento voluntariamente, el PJ debe acudir a los tribunales para hacer valer las restricciones de escritura o convenios, pues la reglamentación federal no le confiere autoridad adjudicativa autónoma para resolver el conflicto internamente.

Examinado el derecho aplicable, procedemos a aplicar el derecho a los hechos particulares del caso.

**III.**

En el recurso de revisión KLRA202500257, el BPPR impugna la *Resolución* emitida por la AFV en la *Querella* Núm. 2020-01, alegando que la Autoridad erró al resolver que no autorizó la compraventa realizada por el matrimonio Rodríguez-Díaz a favor de la Sra. Ortiz Román, actuando contra sus propios actos.

Por su parte, en la *Petición de Certiorari* presentada por la AFV, la agencia plantea que el TPI erró al concluir que carece de facultades cuasijudiciales para adjudicar querellas relacionadas con los programas que administra y que, en consecuencia, el foro primario invadió su jurisdicción administrativa al asumir conocimiento de la demanda presentada por el BPPR. Alega, además, que el tribunal de instancia debió desestimar el caso por falta de agotamiento de remedios administrativos. En síntesis, los señalamientos de error planteados por la AFV giran en torno a la alegada existencia de su poder adjudicativo y a las consecuencias jurisdiccionales derivadas de ello, por lo cual se discutirán en conjunto.

De conformidad con el análisis jurídico antes expuesto, el alcance de las facultades conferidas a la AFV mediante la Ley Núm. 103-2001, las leyes predecesoras y las normas federales aplicables

al Programa *HOME* se circunscribe a funciones administrativas, financieras y de fiscalización, pero no adjudicativas.

Tras revisar el texto íntegro de la Ley Núm. 103-2001, las disposiciones legales previas a dicha ley, así como las relativas al Programa *HOME,* de ninguna de ellas surge alguna disposición que delegue o confiera expresamente poderes cuasijudiciales a la AFV y el mero hecho de que la agencia haya adoptado un reglamento que le atribuye facultades para adjudicar controversias no le confiere válidamente dicha autoridad. Por lo cual, en armonía con la doctrina general de derecho administrativo que ha reiterado nuestro Tribunal Supremo, la Autoridad no puede ejercer poderes que no le hayan sido conferidos expresa o implícitamente por ley, ni actuar más allá del propósito social y económico que la norma persigue. *Ayala Hernández v. Consejo Titulares, supra,* pág. 560. Toda actuación que exceda dicho marco sería considerada *ultra vires* y, por tanto, nula. *Id.*

En el ámbito federal, las regulaciones del Programa *HOME,* disponen que las jurisdicciones participantes, como la AFV, están facultadas para exigir el cumplimiento específico de las condiciones impuestas a los beneficiarios de fondos, fiscalizar los proyectos y recuperar los fondos ante incumplimientos. Sin embargo, no les confiere potestad adjudicativa para resolver disputas entre partes ni para emitir determinaciones finales con efecto de cosa juzgada como alega la AFV.

A la luz de ese marco normativo, la AFV podía constatar administrativamente el alegado incumplimiento de las condiciones del Programa *HOME* y requerir la devolución del subsidio como acreedora hipotecaria; no obstante, carecía de autoridad legal para ventilar una querella y emitir una resolución adjudicativa sobre dicha controversia.

La existencia de un reglamento interno que establezca procedimientos cuasijudiciales no suple la ausencia de una delegación legislativa expresa. Permitir lo contrario implicaría una expansión indebida de la jurisdicción administrativa, en abierta violación al principio de estricta interpretación de las delegaciones de poder.

De lo anterior se desprende que la AFV actuó sin jurisdicción sobre la materia al tramitar y resolver la *Querella* Núm. 2020-01, por lo que la *Resolución* emitida el 14 de marzo de 2025 carece de validez jurídica y debe declararse nula. En consecuencia, el *Recurso de Revisión de Decisión Administrativa* KLRA202500257, que pretende la revisión judicial de dicha resolución, debe desestimarse por falta de jurisdicción sobre la materia, al provenir de un acto administrativo nulo *ab initio*.

Por otro lado, los errores planteados en la *Petición de Certiorari* interpuesta por la AFV tampoco prosperan. El TPI actuó correctamente al concluir que la Autoridad carece de facultades cuasijudiciales y, por tanto, no erró al asumir jurisdicción judicial sobre la demanda de sentencia declaratoria presentada por el BPPR. Dicha acción constituye el vehículo procesal adecuado para dilucidar una controversia de naturaleza civil relacionada con la validez y efectos de una hipoteca inscrita, materia que corresponde al conocimiento exclusivo de los tribunales de justicia.

**IV.**

Por los fundamentos antes expuestos, se desestima el *Recurso de Revisión de Decisión Administrativa* KLRA202500257 por falta de jurisdicción sobre la materia, y se confirma la *Resolución* del Tribunal de Primera Instancia en el caso HU2025CV00253, en cuanto concluyó que la Autoridad carece de poder adjudicativo para ventilar querellas. Por consiguiente, se declara nula la *Resolución*

emitida por la AFV en la *Querella* Núm. 2020-01, al haber sido dictada sin jurisdicción.

Notifíquese.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones