Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL X

| | | |
|---|---|---|
| MARIMAR ROSARIO RIVERO<br><br>Peticionaria<br><br>V.<br><br>RICARDO DANILO EBOLI KODESH<br><br>Recurrido | TA2026CE00216 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm. KDI20190268<br><br>Sobre: Divorcio (Ruptura Irrepararable) |

Panel integrado por su presidenta, la Jueza Grana Martínez, el Juez Ronda del Toro y la Jueza Lotti Rodríguez

Grana Martínez, jueza ponente

**RESOLUCIÓN**

En San Juan, Puerto Rico, a 24 de febrero de 2026.

El 20 de febrero de 2026 la señora Marimar Rosario Rivero[1] compareció, por derecho propio, ante nosotros mediante recurso de Certiorari y Moción en Auxilio de Jurisdicción. A través del recurso nos solicita la revocación de una determinación interlocutoria emitida por el Tribunal de Primera Instancia (TPI) el 17 de diciembre de 2025, notificada el 22 del mismo mes y año. Conforme la naturaleza discrecional del recurso y evaluada la controversia presentada por la señora Rosario Rivero, así como la oposición del señor Ricardo Danilo Eboli Kodesh, nos abstenemos de intervenir con el dictamen del foro recurrido.

I

Los hechos esenciales para comprender la controversia entre las partes se detallan a continuación. Las partes son los progenitores de dos menores, uno de 16 años y otro de, 14.5 años. El 12 de junio de 2019 las partes se divorciaron llegando a unos

---

[1] En Adelante señora Rosario Rivero o peticionaria.

acuerdos sobre custodia, patria potestad, relaciones filiales y pensión alimentaria.

El padre, señor Eboli Kodesh, actualmente vive en Nueva York. El 18 de diciembre de 2023 el señor Eboli Kodesh solicitó al TPI que designara un terapista de reunificación familiar para recuperar su relación de padre con sus hijos, reconociendo que esta se encontraba lacerada. Arguyó que la relación con sus hijos estaba muy deteriorada aduciendo que la última esperanza era la terapia de reunificación. Reclamó su derecho como padre a relacionarse con sus hijos y sostuvo que su participación en la vida de sus hijos no podía limitarse a la de ser un mero proveedor económico.[2] Así las cosas, la Doctora Judith Mercado, psicóloga clínica comenzó a trabajar con la reunificación. La Doctora Mercado rindió un informe sobre sus gestiones, en el cual dio por terminado su gestión como parte del proceso. El Informe fue compartido por el foro recurrido con las partes, el 2 de octubre de 2025. En éste, la doctora Mercado realizó las siguientes recomendaciones:[3]

1. Dar por finalizado el proceso terapéutico de la reunificación familiar.
2. Brindar espacio a los menores para que puedan procesar, ventilar y manejar dentro de un contexto terapéutico, el impacto emocional como resultado de la relación paterno filial y del conflicto entre sus padres.
3. Es necesario que los señores Rosario y Eboli continúen comunicándose, ya que necesitan tomar decisiones en conjunto, relacionadas a los asuntos relevantes en la vida de los menores.
4. Es beneficioso que cada uno desarrolle dentro de un proceso terapéutico individualizado, destrezas de comunicación efectiva, manejo de conflictos, solución de problemas y decidan perdonarse.
5. Es beneficio que los menores cuando estén fortalecidos emocionalmente, exterioricen a su padre, sus sentimientos y heridas emocionales y así podrán liberar la carga emocional que experimentan.

---

[2] Véase Apéndice del recurso, páginas 7 a 9, Sistema Unificado de Manejo y Administración de Casos (SUMAC) entrada número 1 ante el Tribunal de Apelaciones (TA).
[3] Véase Apéndice del recurso, páginas 10 a 14, SUMAC entrada número 1 ante el TA.

6. Es necesario que el señor Eboli cuando tenga la oportunidad de comunicarse con sus hijos, les exprese sus sentimientos de como se ha sentido con la separación de ellos, ya que se considera un padre presente en sus vidas.

7. Es importante que él continue sosteniendo comunicación escrita o verbal con ellos y que su Psicólogo lo oriente sobre cómo hacer dichos acercamientos.

8. Ninguno de los padres, deberán brindar información a los menores sobre los conflictos entre ellos o cualquier otro, sin que se maneje previamente con los profesionales de ayuda.

9. Es necesario que la señora Rosario y el señor Eboli reconozcan y validen al otro, sus fortalezas como padres.

10. Considerar la opción de que los psicólogos (as) de los menores y del señor Eboli, discutan el caso durante periodos de tiempo e integren a la señora Rosario, para considerar el momento de la reunificación familiar.

El 9 de diciembre de 2025, el señor Eboli Kodesh presentó Moción sobre informe Dra. Judith Mercado. Expuso, entre otras, su insatisfacción con el Informe ya que del mismo no surgía hallazgo alguno que ayudara a resolver la controversia sobre la renuencia de sus dos hijos menores a relacionarse con él como padre. Puntualizó que la doctora había atendido a los menores en dos ocasiones negándose estos a ser entrevistados e informando que no se relacionarían con su padre. Reconoció que, aunque no forzaría a sus hijos a relacionarse con él esperaba mucho más del proceso por lo que consignó que su deseo era poder relacionarse con sus hijos y haría lo que fuera para ello. En cuanto a las recomendaciones específicas de la doctora Mercado en su informe al señor Eboli Kodesh, expresó:

1) RECOMENDACIÓN 2: El demandado no tiene reparos en brindarle el espacio a sus hijos a que manejen el proceso en un contexto terapéutico. Sin embargo, solicita que el Tribunal emita órdenes específicas al terapista de su hijo Luca para que como parte de sus terapias incluya esa encomienda y se le haga participe a él del proceso. Además, que en cuanto al menor Micael, quien por información y creencia no recibe terapia psicológica actualmente, se ordene tener terapista y que de igual forma se encomiende a dicho terapista trabajar el mismo asunto. Lamentablemente sin la intervención del Tribunal en cuanto a este asunto, el demandado nunca volverá a ver a sus hijos ya que nada se trabajará al respecto.

2) RECOMENDACIÓN 3: El demandado no tiene reparos en esta recomendación, por lo que solicita que se convierta en una Orden del Tribunal.

3) RECOMENDACIÓN 4: Nos parece que lo indicado en este inciso no es una recomendación, más bien es un comentario de la doctora. El demandado aclara que no tiene reparos en trabajar para desarrollar destrezas de comunicación efectiva.

4) RECOMENDACIÓN 5: tampoco nos parece que lo indicado en este inciso no es una recomendación, más bien es un comentario de la doctora. Se aclara que el demandado nunca ha tenido reparos en escuchar lo que sus dos hijos quieren exteriorizar.

5) RECOMENDACIÓN 6: El demandado espera poder tener la oportunidad de comunicarse con sus hijos, por lo que acepta lo expuesto en este inciso.

6) RECOMENDACIÓN 7: EI demandado espera poder tener la oportunidad de comunicarse con sus hijos y continuará intentando hacerlo, por lo que acepta lo expuesto en este inciso y solicita que se ordene no obstruir esa comunicación con los menores. El demandado tampoco hay reparos en que su terapista trabaje con él estos asuntos.

7) RECOMENDACIÓN 8: El demandado no tiene reparos en esta recomendación, por lo que solicita que se convierta en una Orden del Tribunal.

8) RECOMENDACIÓN 9: El demandado no tiene reparos en que se ordene que ambas partes deberán respetar de roles de padre y madre.

9) RECOMENDACIÓN 10: El demandado acepta esta recomendación, por lo que solicita sea emitida como orden. Pero igual que adelantamos antes, el demandado solicita que dicha Orden sea más específica. O sea, que el Tribunal emita orden específica y directamente al terapista de su hijo Luca y que se ordene tener terapista para el menor Micael, a quien también se le debe ordenar integrar al demandado a la terapia de dicho menor. En este caso, la intervención específica y directa del Tribunal es necesaria.

En fin, solicitó al TPI que le asistiera a retomar las relaciones con los menores. Recabó la necesidad de que los terapistas que asignara el TPI emitieran reportes de progreso periódicos de manera que se pudiera tener certeza de que se estaba trabajando con reestablecer las relaciones filiales.[4] Aun con la oposición de la Peticionaria, por haberse presentado la moción del señor Eboli Kodesh, 63 días calendario después de haber sido notificada por el foro recurrido, el TPI emitió Resolución y Orden el 17 de diciembre de 2025, reducida a escrito, el 22 del mismo mes y año.[5] En esta Resolución y Orden el foro recurrido evaluó el Informe de la doctora

---

[4] Véase Apéndice del recurso, páginas 15 a 18, SUMAC entrada número 1 ante el TA.

[5] Véase Apéndice del recurso, páginas 21 a 23, SUMAC entrada número 1 ante el TA.

Mercado, la moción del señor Eboli Kodesh, el expediente judicial y el interés óptimo de los menores y dispuso lo siguiente:

Se acogen las recomendaciones vertidas en el informe y se emiten las ordenes siguientes a las partes:

(1) Dar por finalizado el proceso terapéutico de la reunificación familiar.

En este momento, el tribunal entiende finalizada la intervención de la Dra. Judith Mercado.

(2) Brindar espacio a los menores para que puedan procesar, ventilar y manejar dentro de un contexto terapéutico, el impacto emocional como resultado de la relación paterno filial y del conflicto entre sus padres.

Se ordena a las partes, en un término de 10 días, informar el nombre, dirección, teléfono y correo electrónico de la terapista que provee servicios a los menores. Se ordena informar las fechas de las últimas tres (3) citas y la próxima cita.

(3) Es necesario que los señores Rosario y Eboli continúen comunicándose, ya que necesitan tomar decisiones en conjunto, relacionadas a los asuntos relevantes en la vida de los menores.

En mérito de lo anterior y considerando que la patria potestad es compartida entre las partes el tribunal determina:

Comunicación entre las partes:

Se ordena a las partes comunicarse con cordialidad, respeto y decoro en todos los asuntos relacionados a los menores. Se ordena a las partes comunicarse mediante mensajes de texto. Se prohíbe a las partes borrar o modificar los mensajes enviados o activar la funcionalidad de eliminar automáticamente los textos. Una vez la parte reciba el texto relacionado a los menores, la otra parte contestará la respuesta que se está esperando en cuanto a la pregunta. Si la comunicación es informativa por lo que no requiere una respuesta, la otra parte contestará, "recibido", de esta forma las partes estarán en conocimiento de que ambas partes han leído la comunicación.

(4) Es beneficioso que cada uno desarrolle dentro de un proceso terapéutico individualizado, destrezas de comunicación efectiva, manejo de conflictos, solución de problemas y decidan perdonarse.

Se ordena a las partes, en un término de 10 días, informar qué profesional de la conducta les ofrece terapias de forma individualizada. Informar nombre, dirección, correo electrónico y teléfono. Se ordena informar la fecha de la próxima cita ante el terapista.

(5) Es beneficioso que los menores cuando estén fortalecidos emocionalmente, exterioricen a su padre, sus sentimientos y heridas emocionales y así podrán liberar la carga emocional que experimentan.

(6) Es necesario que el señor Eboli cuando tenga la oportunidad de comunicarse con sus hijos, les exprese sus sentimientos de como se ha sentido con la separación de ellos, ya que se considera un padre presente en sus vidas.

(7) Es importante que él continúe sosteniendo comunicación escrita o verbal con ellos y que su Psicólogo lo oriente sobre cómo hacer dichos acercamientos.

Se ordena al demandado, en un término de 10 días, comunicarse con la terapista de los menores a los fines de coordinar con ésta, la forma idónea de llevar a cabo el proceso de comunicación con los menores.

(8) Ninguno de los padres, deberá brindar información a los menores sobre conflictos entre ellos o cualquier otro, sin que se maneje previamente con los profesionales de ayuda.

Comunicación a los menores:

Se prohíbe a las partes hablar de forma despectiva en cuanto a la otra parte, su familia o allegados, frente a los menores. Se ordena a las partes detener cualquier conversación, frente a los menores, realizada por una tercera persona cuyo tema sea hablar de forma despectiva de la otra parte, su familia o allegados. Se prohíbe a las partes comunicar a los menores y/o mantenerlo informado de los asuntos subjudice o sobre asuntos que solo conciernen a temas de adultos. Se prohíbe proveer copia o acceso de los escritos que las partes presenten ante el tribunal a los menores.

(9) Es necesario que la señora Rosario y el señor Eboli reconozcan y validen al otro, sus fortalezas como padres.

(10) Considerar la opción de que los psicólogos (as) de los menores y del señor Eboli, discutan el caso durante periodos de tiempo e integren a la señora Rosario, para considerar el momento de la reunificación familiar.

Referido a la Unidad de Trabajo Social:

Se refiere a la Unidad de Trabajo Social a los fines de coordinar con los profesionales de las partes y menores cómo llevar a cabo la terapia dirigida a las relaciones paternofiliales.

Observamos de la Resolución y Orden que el TPI atendió toda la controversia en detalle incluyendo hasta la comunicación entre las partes a través de mensajes de texto. Esto en aras de facilitar la reunificación no tan solo de este padre con sus hijos, sino de la familia completa en beneficio de los menores.[6]

Inconforme la peticionaria presentó Moción de Reconsideración a tenor con la Regla 47 en donde sostiene que el TPI, en su Resolución y Orden acogió las recomendaciones de la doctora Mercado y, las enmendó, en algunas ocasiones, sin contar con su insumo, violentando el derecho a un debido proceso de ley que cobija a la madre y los jóvenes a tener un proceso justo y con las garantías que ofrece la ley. Puntualizó que no se les escuchó, sin embargo, del expediente surge que ésta se opuso mediante Urgente Solicitud referente a "Moción sobre Informe Dra. Judith Mercado" únicamente, para cuestionar el término de tiempo que le tomó al

---

[6] En ocasiones, hemos observado que, como parte del proceso de divorcio, cuesta entender a los adultos que, como norma general, la familia en beneficio de los menores, nunca se desintegra, se transforma por las circunstancias, pero nunca se debe desintegrar, si en efecto se desea el mejor bienestar de los menores.

señor Eboli Kodesh comentar el Informe. No hizo, en dicho momento, ningún señalamiento adicional sobre su parecer sobre las recomendaciones del Informe o las peticiones planteadas por el señor Eboli Kodesh. En fin, la señora Rosario Rivero solicitó que, en lugar de comenzar otro proceso más con la Unidad Social, y en contra de las recomendaciones emitidas por la doctora Mercado, se continuaran los esfuerzos a través de ésta, quien ya estaba familiarizada con la situación, conocía la familia, estaba informada sobre los procesos terapéuticos de la madre y los menores y comprendía lo que el señor Eboli Kodesh interesaba. En resumen, solicitó al foro recurrido que: a) acogiera las recomendaciones de la Dra. Mercado según fueron redactadas y sin enmiendas adicionales; b) ordenara al señor Eboli Kodesh a acogerse a servicios individualizados psicológicos en Puerto Rico; respetara la confidencialidad de la terapia personal e individualizada de los jóvenes con la Dra. Ocasio: permitiera el curso de la terapia personal e individual que provee la Dra. Ocasio a los menores sin entrometerse; no se apareciera sin invitación a la oficina de la Dra. Ocasio; permitiese a los jóvenes el espacio de recuperación recomendado por la Dra. Mercado. Además pidió que el señor Eboli Kodesh indicara la información de contacto y próximas citas con su psicólogo personal en Puerto Rico y el foro primario, en lugar de comenzar otro proceso con la Unidad Social, ordenara al señor Eboli Kodesh a asistir a terapia de coparentalidad, provista por la Dra. Mercado, como parte de los esfuerzos de reunificación; y que fuera la Dra. Mercado, en conjunto con el psicólogo personal del señor Eboli Kodesh quienes trabajaran la manera más propia de este comunicarse con los jóvenes.[7] Contando con la oposición del señor

---

[7] Véase Apéndice del recurso, Moción de Reconsideración a tenor con regla 47, páginas 24 a 32, SUMAC entrada número 1 ante el TA.

Eboli Kodesh y réplica, el 22 de enero de 2026 el Foro recurrido se sostuvo en su determinación y declaró no ha lugar la solicitud de reconsideración de la señora Rosario Rivero.[8]

Aun inconforme, oportunamente la señora Rosario Rivero presentó el recurso que nos ocupa con una urgente solicitud de auxilio de jurisdicción para que paralicemos la determinación recurrida. Insiste en que los menores no están en condiciones de que se lleve a cabo una reunificación.

Presenta los siguientes ocho errores, alegadamente cometidos por el TPI, estos son:

1) ERRÓ EL TPI AL APARTARSE DEL DERECHO VIGENTE Y PERMITIR QUE SE VIOLE EL DERECHO MÉDICO-PACIENTE DE CONFIDENCIALIDAD QUE OSTENTAN LOS JOVENES MRER Y LEER.

2) ERRÓ EL TPI AL APARTARSE DEL DERECHO VIGENTE Y VIOLENTAR EL DERECHO QUE OSTENTAN LOS JÓVENES MRER Y LEER A SOLICITAR Y RECIBIR TERAPIAS PSICOLÓGICAS PRIVADAS, INDIVIDUALES Y PERSONALES PARA ATENDER SU BIENESTAR, EN DETRIMENTO DE SU SALUD MENTAL, FÍSICA Y EMOCIONAL, Y SU DESARROLLO SOCIAL Y ACADÉMICO.

3) ERRÓ EL TPI AL ABUSAR DE SU DISCRECIÓN JUDICIAL Y ORDENAR A LA DRA. MARICEL OCASIO, ESPECIALISTA EN NIÑOS Y ADOLESCENTES, CONTRATADA PRIVADAMENTE PARA PROVEER TERAPIA INDIVIDUAL Y PERSONALIZADA A MRER Y LEER, A CAMBIAR EL ENFOQUE Y PROPÓSITO DE LA TERAPIA DE LOS JÓVENES Y PROVEER TAMBIÉN CONSEJERÍA AL DEMANDADO, EN DETRIMENTO DE DESARROLLO ESCOLAR Y A SALUD MENTAL, FISICA Y EMOCIONAL DE LOS ADOLECENTES.

4) ERRÓ EL TPI AL FINALIZAR LA INTERVENCIÓN TOTAL DE LA DRA. JUDITH MERCADO Y EN SU LUGAR ORDENAR LAS PARTES Y SUS HIJOS A LA UNIDAD DE TRABAJO SOCIAL PARA QUE ESTOS COMIENCEN UN NUEVO PROCESO MEDIANTE EL CUAL SE COORDINE CON LOS TERAPISTAS DE LAS PARTES Y LOS ADOLESCENTES COMO LLEVAR A CABO TERAPIA DIRIGID A LAS RELACIONES — PATERNOFILIALES, SIN CONSIDERAR EL CONTRATAMIENTO PRIVADO DE LA DRA. OCASIO Y EL AGOTAMIENTO DE PROCESOS PSICOLÓGICOS DE LOS JÓVENES, SU ESTABILIDAD Y SU BIENESTAR PSICOEMOCIONAL.

5) ERRÓ EL TPI Y ABUSÓ DE SU DISCRECIÓN JUDICIAL AL APARTARSE DE LAS RECOMENDACIONES HECHAS POR LA DRA. JUDITH MERCADO Y ENMENDARLAS SIN SOLICITAR SU INSUMO, EL DE UN PERITO O EL DE LA MADRE, EN DETRIMENTO DEL BIENESTAR PSICOLÓGICO Y EMOCIONAL DE LOS JOVENES.

---

[8]Véase Apéndice 2 del recurso.

6) ERRÓ EL TPI AL APARTARSE DEL DERECHO VIGENTE E INCORPORAR A LA SITUACIÓN UNA TERAPISTA QUE NO ESTÁ LICENCIADA EN PUERTO RICO, ESTA FUERA DE LA JURISDICCIÓN DE LOS TRIBUNALES LOCALES Y ESPECIALIZA EN ADULTOS Y PAREJAS, NO ADOLESCENTES NI FAMILIAS.

7) ERRÓ EL TPI AL ATENDER LA MOCIÓN QUE EL DEMANDADO RADICÓ EXCESIVAMENTE TARDE, SIN JUSTA CAUSA Y FUERA DE TÉRMINO, YA QUE HABIAN PASADO 63 DÍAS DESDE LA ORDEN DELTPI.

8) ERRÓ EL TPI AL CATALOGAR COMO "INFORME" LA CERTIFICACIÓN DE LA DRA.MERCADO.

II

El *certiorari* es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar a su discreción una decisión de un tribunal inferior. Art. 670 del Código de Enjuiciamiento Civil de 1933, 32 LPRA sec. 3491, hoy conocido como Ley de Recursos Extraordinarios. Véase también *800 Ponce de León Corp. v. AIG*, 205 DPR 163, 174 (2020); *Mun. Caguas v. JRO Construction, Inc.*, 201 DPR 703, 710 (2019); *Medina Nazario v. McNeil Healthcare, LLC*, 194 DPR 723, 728 (2016). Aunque el *certiorari* se reconoce como un recurso discrecional la sensatez del juzgador se guía por unos límites. Es decir, la discreción judicial no es irrestricta y ha sido definida en nuestro ordenamiento jurídico como "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". *Medina Nazario v. McNeil Healthcare LLC, supra*, pág. 729; *Negrón v. Srio. de Justicia*, 154 DPR 79, 91 (2001).

El primero de estos límites es la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V. Esta dispone en lo pertinente que el recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar

órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.

Superados los criterios de la Regla 52.1 de Procedimiento Civil, venimos llamados a ejercer nuestro criterio sujeto a lo dispuesto en el Reglamento del Tribunal de Apelaciones mediante la Regla 40, 4 LPRA Ap. XXII-B. Esta dispone que el tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de certiorari o de una orden de mostrar causa:

> A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
> B) Si la situación de los hechos planteada es la más indicada para analizar el problema.
> C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto de la apreciación de la prueba por el Tribunal de Primera Instancia.
> D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, por los cuales deberán ser elevados, o de alegatos más elaborados.
> E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
> F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
> G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Luego de examinar detenidamente el expediente del presente caso, y conforme a la discreción que ostentamos para expedir un recurso de *certiorari* según lo establece la Regla 52.1 de Procedimiento Civil y los criterios expuestos en la Regla 40 del Reglamento del Tribunal de Apelaciones, consideramos que no estamos ante una situación que justifique nuestra intervención con

el dictamen recurrido, conforme lo cual declinamos ejercer el recurso.

III

Por los fundamentos antes expuestos, se deniega el recurso de *certiorari* presentado, así como la Moción en Auxilio de Jurisdicción.

Notifíquese inmediatamente.

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones